**Tanya Thaxton REID, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–96–0245–CR.

Court of Appeals of Texas, Amarillo.

Feb. 24, 1998.

E. Dean Roper, Amarillo, for appellant.

Roland Saul, Criminal District Attorney, Hereford, for appellee.

Before BOYD, C.J., and DODSON and QUINN, JJ.

BOYD, Chief Justice.

In eight points of error, appellant Tanya Thaxton Reid contends her conviction of murder and the consequent jury-assessed punishment of 40 years confinement in the Institutional Division of the Department of Criminal Justice must be reversed. In the first four of those points, she argues the trial court abused its discretion in admitting testimony regarding Munchausen Syndrome by Proxy because 1) it is not relevant and not scientific knowledge, 2) it is not relevant and would not assist the trier of fact, 3) the probative value of the evidence is substantially outweighed by its prejudicial effect, and 4) it is impermissible character evidence under Rule 404(a) of the Texas Rules of Criminal Evidence. In her next four points, she posits the trial court abused its discretion in admitting 5) evidence of extraneous offenses allegedly committed by appellant against Morgan Reid, her child, 6) evidence of extraneous offenses allegedly committed by appellant against Robert Matthew Reid (Matthew), another of her children, 7) evidence that Matthew was removed from her custody in a prior judicial proceeding, and 8) in admitting expert testimony regarding Munchausen Syndrome by Proxy to prove appellant committed the extraneous offenses against Matthew and Morgan and, as well, to prove that appellant committed the charged offense. We affirm the judgment of the trial court.

Because the questions presented by this appeal are primarily legal, and the factual record is lengthy, other than a background statement, we will refer to the factual evidence as it becomes necessary to a proper discussion of appellant's challenges. Parenthetically, there is a paucity of cases which have considered and discussed Munchausen Syndrome by Proxy. Indeed, as the result of research by the parties, and independent research by this court, we have found only two cases in which even peripheral reference was made to the syndrome. In *Olivier v.*

*State,* 850 S.W.2d 742 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd), the court referred to uncontroverted medical testimony that the appellant suffered from Munchausen's Syndrome and from schizo-defective disorder in holding that a trial jury verdict that implicitly rejected an insanity defense was manifestly unjust because it ignored that uncontroverted testimony. *Id.* at 748–49. In its opinion, without extensive discussion, the court assumed the validity of the diagnosis of Munchausen's Syndrome. However, it did not touch upon or discuss the extension of that diagnosis known as Munchausen's Syndrome by Proxy. In *Crocker v. State,* 573 S.W.2d 190 (Tex.Crim.App.1978), again without extensive discussion, the court merely referred to medical testimony in which reference was made to Munchausen's Syndrome and an explanation for the name given to that condition. *Id.* at 200. In neither of these cases were the questions, with which we are presented, raised and discussed.

As background, suffice it to say that on February 7, 1984, Deaf Smith County Emergency (EMS) personnel were summoned to the home of Tanya and Raymond Reid because their infant daughter, Morgan Reid, had suffered an apnea[2] episode. When the EMS personnel arrived, appellant was attempting to resuscitate Morgan. After an initial visit to the hospital in Hereford, Morgan was taken to Northwest Texas Hospital in Amarillo. Efforts to revive her were unsuccessful and, after it was learned the child was brain dead, she was removed from the ventilator and she died some fourteen hours later. After an autopsy, her cause of death was determined, and is shown on her death certificate, as brain death secondary to cardiorespiratory arrest of undetermined etiology.

The Reids also had another child, Robert Matthew Reid, who had apnea episodes beginning in 1985 and continuing until March of 1988. In March 1988 in Des Moines, Iowa, by court order, Matthew was adjudicated a child in need of assistance, removed from the Reid home, and placed in foster care. After that time, Matthew suffered no further apnea episodes.

In our discussion, as did the parties, we will refer to Munchausen Syndrome by Proxy by its initials, *i.e.,* MSBP. Appellant's challenges present four basic questions to be decided by us. The first is whether MSBP has attained a sufficient degree of scientific reliability to be admissible in a proper case. A subset of that question, assuming the diagnosis is sufficiently reliable to be received into evidence, is whether it is relevant in this particular case. The second question, assuming affirmative answers to the first question and its subset, is whether, in this case, the probative value of the MSBP testimony is exceeded by its prejudicial effect. The third question is whether the trial court erred in admitting evidence of extraneous offenses allegedly committed by appellant against Matthew and Morgan, as well as admitting expert MSBP testimony to establish appellant committed these extraneous offenses and, by extension, that she committed the offense charged. The fourth question is if the trial court reversibly erred in admitting evidence that custody of Matthew, Morgan's brother, was removed from appellant in a prior judicial proceeding.

Texas Rule of Criminal Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Prior to the adoption of Rule 702,[3] the standard for admissibility of expert testimony as to scientific evidence was whether the subject matter "had gained general acceptance in the particular field in which it belongs." *See Frye v. United States,* 293 F. 1013 (D.C.Cir.1923); *Zani v. State,* 758 S.W.2d 233 (Tex.Crim.App.1988). However,

---

**2.** Apnea, in a pathological sense, is defined as "a suspension of respiration, partial or entire; suffocation." Reader's Digest Great Encyclopedic Dictionary (including Funk & Wagnalls Standard College Dictionary) 1975 Edition.

**3.** Later references to rule numbers are to those Rules of Criminal Evidence unless otherwise specifically denominated.

Rule 702 has now superseded that standard. *Jordan v. State*, 928 S.W.2d 550, 553 (Tex. Crim.App.1996), citing *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App.1992).

■ The seminal case in interpreting the threshold requirements for admissibility of expert testimony under Rule 702 is *Kelly v. State, supra.* In *Kelly*, the court held that to be admissible under the rule, proffered scientific expert testimony must be "sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly v. State*, 824 S.W.2d at 572. In order to meet that reliability standard, the evidence must meet three criteria: a) the underlying scientific theory must be valid; b) the technique applying the theory must be valid; and c) the technique must have been properly applied on the occasion in question.[4] *Id.* at 573. In its analysis, the *Kelly* court applied Rule 104(a) and (c), in conjunction with Rule 702, and determined that prior to its receipt into evidence, the proponent must satisfy the trial court in a preliminary hearing outside the presence of the jury, that the expert testimony meets all three criteria. *Id.* at 573. In doing so, the *Kelly* court also listed several non-exclusive factors that might affect a determination as to whether those criteria had been met. Those non-exclusive factors are: 1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; 2) the qualifications of the expert(s) testifying; 3) the existence of literature supporting or rejecting the underlying scientific theory and technique; 4) the potential rate of error of the technique; 5) the availability of other experts to test and evaluate the technique; 6) the clarity with which the underlying scientific theory and technique can be explained to the court; and 7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Id.; see also Jordan*, 928 S.W.2d at 554–55. In discussing the *Kelly* "reliability" test, the *Jordan* court opined that it was upon that inquiry that the trial courts could weed out so-called "junk

science" and, in doing so, trial judges are called upon to serve as "gatekeepers." *Jordan*, 928 S.W.2d at 555.

Needless to say, the careful trial judge held the requisite pretrial hearing before making his determination that the MSBP testimony was admissible. At the preliminary hearing, the State's expert witness was Dr. Thomas Bennett, the Iowa State Medical Examiner. Because of the importance of his testimony in determining whether the trial court properly decided to admit MSBP testimony, it is necessary to recount relevant portions of that testimony. Appellant does not challenge Dr. Bennett's expertise in the field of pathology and child abuse, therefore it is not necessary in this opinion to address his qualifications. Dr. Bennett described MSBP as a "fairly recently" developed term for "a medical diagnosis that has been accepted to encompass, what we found is some rather unexplainable otherwise signs and symptoms" in children. He said he had seen "probably" a dozen or more cases over the years and he has consulted on "numerable others, numerous others."

Dr. Bennett noted that he had personally performed around 4,000 autopsies over the years, and reviewed "thousands" by virtue of his responsibilities as the state medical examiner, and even others on a consultive basis. Additionally, Dr. Bennett had testified as an expert on MSBP in four or five cases and, basically, had been an expert in almost every case that has been presented in Iowa. Dr. Bennett defined MSBP as "a series of unexplained incongruous signs and symptoms the child presents with but after you do further testing or remove them from the caretaker's control the signs and symptoms tend to disappear or they resolve otherwise." He also opined that because the signs and symptoms do not otherwise fit into a classic medical diagnosis, the children are victimized otherwise over the years "in an ongoing pattern of medical intervention studies diagnostic tests which are in themselves even abusive because they involve invasion into the body for blood work, other tests through the

---

4. The reasoning used by the *Kelly* court in arriving at its reliability test was approved and adopted by the Texas Supreme Court in *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995).

looking at various orifices and so on, and again is one that carries with it, and unfortunately, a very significant percentage of cases to make more percent of cases a fatality risk." He concluded that about ten percent of MSBP cases do result in fatalities, and "it's a very severe form of child abuse."

When queried about the diagnosis's acceptance in medical circles, Dr. Bennett averred, "[t]his theory has been studied, it has been written up in dozens and dozens of articles, and it has in my opinion achieved widespread acceptance, and it is now being taught in the schools, because if you don't teach of it—if you don't teach it the doctor won't think of it; if you don't think of it you won't diagnose it because it is such a severe form of child abuse. It has been taught and it is recognized and accepted, it's even in the latest addition of the diagnostical manual, the DSM–4 has recognized it, it's finally made that recognized entity." The DSM–4, he explained, is a book prepared over the years primarily for psychiatric disorders. The book, he said, has a special chapter for fictitious disorders by proxy which "is another way of saying" MSBP.

In his testimony, Dr. Bennett also reviewed State's pretrial exhibit 10 consisting of six photocopies of complete articles and a med-line database search covering the period from 1922 to May 1996 which showed 122 articles in their abstract form. The search also contained the citations by which those articles could be located if it was desired to read them in their entirety. The doctor also identified State's pretrial exhibit 11, which was another bibliography containing articles relating to MSBP going back to 1977. The State also offered its pretrial exhibit 12 which was a compilation of some 17 legal articles dealing with MSBP. The witness also commented there were "many" books or publications which discussed MSBP. He specifically identified a book written by Robert Reese as one of the publications dealing with child abuse medical diagnosis and which contained a chapter dealing specifically with MSBP, although the book itself was not introduced into evidence. Dr. Bennett also opined that there were "dozens and dozens

and dozens"[5] of experts who would be available to testify concerning MSBP. It was Dr. Bennett's conclusion that a diagnosis of MSBP was "universally accepted." After an examination of Morgan and Matthew's medical records, it was his conclusion that the children were victims of MSBP. With regard to Morgan, the child whose death appellant was accused of causing, the doctor's conclusion was that the underlying cause of death was MSBP. The medical records of Morgan and Matthew were also properly verified and introduced at the pretrial hearing.

■ The evidence introduced at the pretrial hearing was sufficient to sustain the trial court's "gatekeeper" decision that it was sufficient to meet all three criteria explicated in the *Kelly* case. Even so, we also note the exception to the general rule that in determining whether the trial court erred in resolving a pretrial evidentiary motion, we may consider only evidence adduced at the hearing on that motion. That exception applies in cases in which a point of error complains of the admission of evidence at trial, and the issue has been consensually relitigated by the parties at trial on the merits. *Hardesty v. State,* 667 S.W.2d 130, 133 n. 6 (Tex.Crim. App.1984).

■ At trial, expert witnesses Drs. Carol Rosen, Randall Alexander, Austin Colman, and Thomas Kelly testified for the State. Parenthetically, appellant does not challenge the expertise of any of these witnesses. As each expert witness was tendered by the State at trial, appellant's trial counsel objected to the receipt of any MSBP testimony for reasons similar to those she advanced at the pretrial hearing and is also advanced in this appeal. Accordingly, a voir dire examination of each witness was conducted outside the presence of the jury and prior to the receipt of the witness's testimony before the jury. Thus, the issues were consensually relitigated by the parties at trial. Because that is true, the exception to the general rule is applicable and the experts' trial testimony may also be considered in determining the admissibility of the MSBP testimony. Distilled, the testimony of the expert witnesses

5. He commented there were 20 such experts in    the State of Iowa alone.

was that: MSBP is an identifiable, reliable, generally accepted medical diagnosis (Dr. Bennett in pretrial testimony) (Dr. Rosen at trial) (Dr. Alexander at trial); MSBP is a form of child abuse in which a caretaker either makes up illness symptoms or is actively creating or causing those symptoms (Dr. Bennett in pretrial testimony) (Dr. Rosen at trial) (Dr. Alexander at trial); the illnesses are usually extraordinary or bizarre, result in multiple hospitalizations, and extensive medical evaluations never seem to reveal explanations for the child's illness (Dr. Rosen at trial); the MSBP diagnosis is recognized in medical schools and is taught in those schools (Dr. Bennett in pretrial testimony) (Dr. Alexander at trial) (Dr. Colman at trial); MSBP is the subject of medical literature (Dr. Bennett at pretrial) (Dr. Rosen at trial); information about MSBP was helpful in determining a medical diagnosis or treatment of Morgan (Dr. Rosen at trial). Dr. Rosen also opined that the MSBP diagnosis would be helpful in determining intent, motive, plan, pattern, absence of illness, mistake or accidents in the apnea episodes suffered by Morgan. Thus, the expert testimony at trial reinforces the trial judge's pretrial conclusion that the MSBP diagnosis is one generally recognized and accepted in the medical community and meets the three-prong reliability test articulated by the *Kelly* court. We also note that appellant's medical expert, Dr. Stephen L. Linder, although disagreeing that the diagnosis was applicable to appellant, admitted that MSBP was "a medical diagnosis and it falls in this category of medical and psychiatric."

■ Rule 702 also requires that the trial court, before admitting expert testimony, must be satisfied that another three conditions are met: 1) that the expert witness qualifies as an expert by reason of his knowledge, skill, experience, training or education; 2) the subject matter is an appropriate one for expert testimony; and 3) that admitting the expert testimony will actually assist the jury. *Alvarado v. State,* 912 S.W.2d 199, 216 (Tex.Crim.App.1995). The trial court's decision as to those three conditions may not be disturbed on appeal absent an abuse of discretion. *Id.* at 217.

Here, as the expert testimony was received at trial, the jury was instructed that if there was any testimony from the witnesses that appellant had committed "offenses, wrongs, or acts other than the offense alleged here in the indictment," it could not consider them unless they believed beyond a reasonable doubt appellant committed them and then might only consider them in determining "intent, motive, plan, pattern, absence of illness, mistake or accident, if any" in connection with the offense alleged against her in the indictment. With regard to MSBP testimony, the judge orally instructed that it might be considered:

* * * only for the limited purpose or purposes of assisting you in considering the motive of the defendant, if any; the intent of the defendant, if any; the plan of the defendant, if any; the pattern, if any, of apneic episodes, if any, involving Morgan Reid or Robert (Matthew) Reid, if any, or both of them, if any;

The absence of illness, mistake or accident, if any; the state of mind of the defendant on the occasion in question, if any; the medical diagnosis of Morgan Reid, if any; the relationship between the defendant and Morgan Reid, if any;

The cause of death of Morgan Reid, if any, in connection with the offense, if any, alleged against the defendant in the indictment in this case and no other purpose or purposes.

A similar instruction was given the jury in the court's charge with the addendum that they "could not consider evidence of Munchausen Syndrome by Proxy, if any, as a substitute for proof that the defendant committed the crime charged nor as proof that the defendant has a criminal personality, if any, or bad character, if any."

Having made the decision that the trial court did not err in determining the scientific reliability of the MSBP testimony, it becomes necessary to determine appellant's next challenge. She argues that even if it is found the expert MSBP testimony meets the *Kelly* test, the trial court abused its discretion in admitting the testimony because "it is not relevant and would not assist the jury; and, even if relevant, its probative value is sub-

stantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury."

In considering this challenge, again we must bear in mind the rule that a trial court is vested with the discretion to admit or exclude evidence and an appellate court should not reverse a trial court unless that court has abused its discretion in admitting the evidence. *Duckett v. State*, 797 S.W.2d 906, 913 (Tex.Crim.App.1990). It is also the rule that if evidence is relevant to a matter or issue in the case, our evidentiary rules now require the party opposing the proffered evidence not only to demonstrate the negative attributes of the evidence but also show how those negative attributes substantially outweigh its probative value. *Id.* at 911.

In Rule 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In considering the question of relevancy, it is worthy of note that although a prosecutor ordinarily need not prove motive as an element of a crime, the absence of an apparent motive may make proof of the essential elements of a crime less persuasive. That is certainly the case here. In the absence of a motivational hypothesis, and in the light of other information which was before the jury concerning appellant's demeanor, personality and character, including the fact that she was the mother of the child, without other relevant and reliable evidence, the conduct ascribed to appellant was incongruous and apparently inexplicable. MSBP testimony would, if accepted by the jury, bridge that gap.

In *Rousseau v. State*, 855 S.W.2d 666, 686 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993), noting that Federal Rule of Evidence 702 is identical to our Rule 702, the court quoted with approval the characterization of that federal rule contained in its commentary. The quote is as follows:

Whether the situation is a proper one of the use of expert testimony is to be determined on the basis of assisting the trier. 'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightment from those having a specialized understanding of the subject involved in the dispute. [citation omitted]. When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. [citation omitted].

*Rousseau*, 855 S.W.2d at 686. In *Duckett v. State*, 797 S.W.2d at 906, in referring to the basic question of whether the expert testimony would assist the jury in arriving at a verdict, the court observed, "[w]here such testimony is highly specialized or technical in nature, so as to be outside the knowledge of the average layman, a threshold determination of admissibility under Rule 702 is both proper and consistent with prior case law of this State." *Id.* at 911. Thus, Rule 702 actually involves a dual inquiry of reliability and relevancy, the reliability inquiry being as we discussed above. In *Jordan*, the court commented:

Relevance is by nature a looser notion than reliability. Whether evidence "will assist the trier of fact" and is sufficiently tied to the facts of the case is a simpler, more straight-forward matter to establish than whether the evidence is sufficiently grounded in science to be reliable.

*Jordan*, 928 S.W.2d at 555. In her brief, appellant admits the expert testimony was sufficiently tied to the facts of this case. The existence, nature, validity, and applicability of these facts to the MSBP phenomenon are matters sufficiently beyond common experience that expert testimony would assist the trier of fact. Thus, it was relevant and of a nature sufficient to justify the trial court's evident determination that it met the three requirements explicated in *Alvarado*.

However, appellant continues, even assuming *arguendo*, that if the expert testimony is deemed relevant, reliable, and otherwise admissible, the trial court "crossed the line" of admissibility by allowing the experts to testify that in his or her opinion, appel-

lant repeatedly suffocated the children. That testimony was improper, reasons appellant, because in so testifying, the experts impermissively decided for the jury the ultimate issue of appellant's guilt.

Morgan was born on May 17, 1983, and died on February 8, 1984. The State introduced evidence of approximately 13 apnea episodes suffered by Morgan prior to her death. The State's evidence was that the apnea episodes were similar in that they usually occurred on weekdays between 1:00 p.m. and 4:00 p.m., Morgan was usually awake before the episodes began, appellant was the only one present who observed the onset of an apnea episode and she was the one who had to revive Morgan by the use of mouth-to-mouth or cardiopulmonary resuscitation. The State also presented testimony that Morgan had undergone tests without a satisfactory physiological explanation for the apnea episodes.

With regard to Matthew, the State's evidence showed he was born on May 2, 1985, and had his first of approximately 15 apnea episodes some 26 days later. Appellant was the only one who witnessed the onset of the severe apnea episodes; they only occurred when Matthew was awake; appellant performed mouth or cardiopulmonary resuscitation upon him; Matthew underwent numerous tests without a satisfactory physiological explanation for the tests. The State also produced evidence that he never had another apnea episode after he was removed from appellant.

■ In responding to this challenge, the State initially contends the question was not preserved for our review. This follows, it says, because appellant's objections and requests for running objections were merely directed at the admission of testimony about MSBP, *per se,* and did not specifically address the issue of identification of appellant as the perpetrator. Texas Rule of Appellate Procedure 52 requires that in order to preserve a complaint for appellate review, an objection must state the specific grounds for the ruling which he desires the court to make "if the specific grounds were not apparent from the context." Here, even if the objection is deemed to be somewhat short of speci-

ficity, appellant's objections were clearly addressed to the testimony as a whole, as well as to the incidents listed in the indictment, the result being that the objections were sufficient to advise the trial court that appellant was not only objecting to any MSBP testimony, but was also objecting to any testimony indicating that her conduct caused Morgan's death. We will, therefore, also consider this challenge.

■ In advancing her proposition, appellant acknowledges the provision of Rule 704 that expert testimony, which is otherwise admissible, is not objectionable because it embraces an ultimate fact to be decided by the trier of fact. However, she argues, while an expert witness may possess scientific, technical, or other specialized knowledge concerning MSBP as a form of child abuse, "that same person does not possess 'scientific, technical, or other specialized knowledge' beyond the realm of the jury in making a determination of Appellant's guilt or innocence," and the effect of the challenged testimony was to invade that realm.

In support of her position, appellant cites, and primarily relies upon *Duckett v. State, supra,* and *Yount v. State,* 872 S.W.2d 706 (Tex.Crim.App.1993). In *Duckett,* as relevant here, the court decided that expert testimony concerning the Child Sexual Abuse Syndrome was admissible. *Duckett,* 797 S.W.2d at 917. En route to holding the testimony was admissible, the court opined that if a qualified expert offers to give testimony on whether the reaction of one child is similar to the reaction of most victims of familial child abuse, it would assist the jury in determining whether such an assault actually occurred. *Id.* Thus, it concluded, the testimony was admissible "both in terms of his abstract or general testimony and his opinions applying the syndrome elements to the facts of the case," even though it indirectly embraced the question of the child's credibility. *Id.* The court also opined that "testimony which merely *embraces* (emphasis in original) the ultimate issue is clearly admissible under rule 704." *Id.* at 920. However, it cautioned, to permit an expert witness to give a direct opinion whether the child witness was actually telling the truth or could be

believed, it would cross the line of assisting the trier of fact and would replace that body. *Id.* Appellant would analogize the latter observation to the expert testimony in this case.

In *Yount,* consistent with *Duckett,* the court held it was reversible error to allow a witness to give a direct opinion as to the truthfulness of a child witness or of a class to which that child belongs. *Yount,* 872 S.W.2d at 712. Its reasoning, again, was that once an expert has imparted his or her scientific, technical, or specialized knowledge concerning his or her area of expertise, the jurors are just as capable as the expert in determining the credibility of a witness. *Id.* at 713.

. In this case, however, the testimony about appellant's conduct with her minor children was part and parcel of the diagnosis of MSBP, a diagnosis which could not be made without application to the facts of the case. The testimony was about a mental condition, the understanding of which is beyond the comprehension and understanding of the average person. Under the peculiar and special circumstances of the psychiatric condition known as MSBP and its diagnosis, the experts' use of the facts, *i.e.,* the apnea episodes and appellant's relation to them, in pursuing and determining their medical diagnosis, in explaining the diagnosis to the jury, and giving their opinion as to the cause of Morgan's death was within the permissible range of Rule 702 testimony as an aid to the jury in determining the guilt or innocence of appellant. As such, it did not preempt or invade the peculiar and special right to determine guilt.

In homicide cases, it has long been established in this state that the cause of death may be shown by either or both expert and circumstantial evidence, and such evidence is admissible for that purpose. *White v. State,* 165 Tex.Crim. 339, 306 S.W.2d 903, 906 (1957) (reversed on other grounds), *cert. denied,* 355 U.S. 936, 78 S.Ct. 420, 2 L.Ed.2d 419 (1958); *Hines v. State,* 515 S.W.2d 670, 673 (Tex.Crim.App.1974); *Mays v. State,* 563 S.W.2d 260, 263 (Tex.Crim.App.1978); *Barcenes v. State,* 940 S.W.2d 739, 744 (Tex. App.—San Antonio 1997, pet. ref'd). *See and compare Rodriguez v. State,* 906 S.W.2d

70, 73 (Tex.App.—San Antonio 1995, pet. dism'd). With the limiting instruction he gave, the trial judge did not abuse his discretion in admitting the MSBP to aid the jury in making its determination as to the cause of Morgan's death.

Our preceding discussion foreshadows our disposition of appellant's rather conclusory argument that the probative value of the expert testimony was substantially outweighed by its prejudicial effect. As we have discussed above, by its very nature, the MSBP diagnosis depends upon expert testimony such as was received here and is necessary to aid the jury in deciding the ultimate issue of guilt or innocence in cases such as this. Under this record, appellant has not met her burden of demonstrating that the negative attributes of the MSBP testimony substantially outweighed its probative value. Thus, we hold the trial court did not abuse its discretion in reaching that conclusion.

■ It now becomes necessary to consider appellant's argument that the trial court abused its discretion in admitting the testimony about MSBP because it was impermissible character conformity evidence under Rule 404(b). That rule provides:

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

In stating her argument, appellant primarily relies upon the rationale expressed in *Brewington v. State,* 802 S.W.2d 691 (Tex. Crim.App.1991). In *Brewington,* the appellant was charged with sexually molesting his own eleven-year-old daughter. At trial, the prosecution had been allowed to introduce testimony that the appellant was a fixated pedophile, without reference or relation to

the facts of the case, other than an inference that might be drawn. Thus, in the appellate court's words, the testimony was presented "solely to prove appellant's propensity to molest children and that he acted in conformity therewith when he committed the charged offense." *Id.* at 692. The court held this type of evidence was improperly admitted both under the common law and under Rule 404(a) which provides, with certain exceptions not pertinent to our discussion, that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." *Id.*

However, in this case, the MSBP testimony was not received for character conformity purposes. Rather, as we have discussed, the testimony was necessary to show the basis for the diagnosis of a recognized medical condition, *i.e.*, MSBP, and was directly related to the facts of the case. The relationship between appellant and her children's apnea episodes were part and parcel of, and were necessary to show, the medical reasons for the diagnosis. The diagnosis and appellant's connection to it were directly related to the murder charge against her. Thus, the expert testimony did not fall within the ambit of abstract generalities about a character trait that might lead to an inference of guilt, the vice proscribed by the Rule.

In the seminal case of *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1991) (on reh'g), the Court of Criminal Appeals had occasion to discuss the implications of the Rule 404(b) proscription against character conformity evidence. In doing so, the court pointed out that "other crimes, wrongs, or acts" may be admissible if they have relevance apart from their tendency to show character conformity. *Id.* at 387. That is, the court noted, a party may introduce such evidence where it logically serves to make more or less probable an essential fact, or where it serves to make more or less probable an evidentiary fact that inferentially leads to an elemental fact. *Id.* As illustrative of those permissible purposes, the court noted the Rule 404(b) iteration that such matters may be receivable as proofs of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident. *Id.* If the tendering party shows such evidence has relevance beyond its tendency to show character conformity, it is admissible; subject, however, to the trial court's discretion to exclude it if the probative value is substantively exceeded by the danger of unfair prejudice. *Id. See also Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App. 1997) (in prosecution for murder committed in course of attempted kidnapping, subsequent offense of abuse of a corpse admissible as making specific intent to commit kidnapping more probable).

In *Plante v. State*, 692 S.W.2d 487 (Tex. Crim.App.1985), the appellant was charged with felony theft by deception. The trial court, in pursuance of its theory that the appellant's repeated failure to fulfill promises to pay others was probative on the issue of his intent not to pay in the charged offense, allowed the State to produce the testimony of 35 witnesses about extraneous offenses. In its rumination, the court stated that the test of admissibility of extraneous offenses has two steps. First, it must be determined the extraneous offense evidence is relevant to a material issue in the case other than the defendant's character. *Id.* at 491. Second, the evidence must possess probative value outweighing its prejudicial effect. *Id.* The court held that all but seven of the extraneous offenses were properly admitted and concluded that the improper admission of the seven other offenses did not require reversal. *Id.* at 495. It is of interest that in arriving at its decision that reversal was not required, the court commented, "[t]his is especially true when we consider the fact that the twenty-eight witnesses who testified properly, testified, in some cases, to more than one transaction involving appellant. Thus, the number of admissible transactions was actually far in excess of twenty-eight." *Id.*

En route to arriving at its decision, the *Plante* court quoted with approval a discussion by Professor John Wigmore of a theory of admitting extraneous offenses known as "the doctrine of chances," a term coined by Wigmore. *Plante*, 692 S.W.2d at 491–92. Because we think it has relevance to this

case, we set out below that portion of the opinion with the quote. It is as follows:

> * * * The relevancy of the extraneous offense derives purely from:
>
> the point of view of the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.
>
> * * *
>
> It will be seen that the peculiar feature of this process of proof is that the act itself is assumed to be done,—either because (as usually) it is conceded, or because the jury are [sic] instructed not to consider the evidence from this point (sic) view until they [sic] find the act to have been done and are proceeding to determine the intent. *This explains what is a marked feature in the rulings of the courts, namely, a disinclination to insist on any feature of common purpose or general scheme as a necessary requirement for the other acts evidentially used. It is not here necessary to look for a general scheme or to discover a united system in all the acts; the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand.*

Yet, in order to satisfy this demand, it is at least necessary that prior acts should be *similar.* Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance.... In short, there must be a similarity in the various instances in order to give them probative value. 2 Wigmore, *Evidence,* § 302 (Chadbourn rev. ed.1979) [emphasis in original] (other citations omitted).

In response, quoting a definition of character as "a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance, or peacefulness," [6] the State argues that the MSBP testimony was not received as evidence of appellant's character or a trait of her character. *See Plante,* 692 S.W.2d at 491. *See also Cantrell v. State,* 731 S.W.2d 84 (Tex.Crim.App.1987); *Prieto v. State,* 879 S.W.2d 295 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *Dabney v. State,* 816 S.W.2d 525 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd); *Goldstein v. State,* 803 S.W.2d 777 (Tex.App.—Dallas 1991, pet. ref'd); *Wiggins v. State,* 778 S.W.2d 877 (Tex.App.—Dallas 1989, pet. ref'd); *Morrow v. State,* 735 S.W.2d 907 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd); *Scott v. State,* 720 S.W.2d 264 (Tex.App.—Austin 1986, no pet.).

Under the facts of this case, and for the purposes for which it was admitted, the evidence about the episodic apnea events involving appellant and her children were admissible. Accordingly, the trial court did not abuse its discretion in admitting such evidence.

■ We must now consider appellant's contention that the trial court erred in admitting testimony that Matthew was removed from appellant's custody. We note that during his direct examination, State's witness Dr. Thomas Kelly twice made reference to Matthew's removal, and during re-direct examination again referred to the child's removal, all without objection. Additionally, during direct examination by counsel, defense witness Raymond Reid was asked

---

**6.** *See* McCormick, Evidence § 195 (4th Ed.1992); S. Goode, O.G. Wellborn, and M.M. Sharlot,

Guide to the Rules of Evidence: Civil and Criminal, § 404.2 (Texas Practice 2d Edition).

about Matthew's removal from his home in Iowa and about his well being when in foster care. Assuming, *arguendo,* that evidence about this removal was inadmissible, it is the rule that inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it establishes the same fact that the inadmissible evidence sought to prove. *Stoker v. State,* 788 S.W.2d 1, 14 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Willis v. State,* 785 S.W.2d 378, 383 (Tex.Crim.App.1989); *Russell v. State,* 904 S.W.2d 191, 202 (Tex.App.—Amarillo 1995, pet. ref'd).

Additionally, under the authorities we have cited, this evidence was admissible. The State's case was purely circumstantial. The fact that until Matthew was removed from appellant's custody he suffered the same symptoms as Morgan but they did not reoccur after he left her custody was admissible as evidence of a system or scheme and as bearing upon appellant's intent. It was also admissible to aid the jury in determining whether Morgan died as a result of some defect or disease of an unknown origin. In sum, the evidence was admissible for the purposes for which it was admitted, given the trial court's limiting instructions both at the time of the receipt of the evidence and in its written jury charge.

In final summary, all of appellant's points are overruled and the judgment of the trial court affirmed.