OPINION



No. 04-06-00098-CR



Dario Ramiro ACEVEDO,


Appellant



v.



The STATE of Texas,


Appellee



From the 216th Judicial District Court, Kendall County, Texas


Trial Court No. 4418


Honorable Stephen B. Ables, Judge Presiding



Opinion by: Rebecca Simmons, Justice


Sitting: Alma L. López, Chief Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice


Delivered and Filed: January 30, 2008


REVERSED AND REMANDED

 

 Appellant Dario Acevedo was convicted by a jury for the murder of Jeffrey Donofrio. The
trial court assessed punishment at life imprisonment. On appeal, Acevedo presents several issues,
including erroneously admitted evidence. Because we conclude that the trial court abused its
discretion in admitting the testimony of the State's expert Dr. Michael Arambula, and cannot say
such testimony did not affect a substantial right, we reverse the judgment of the trial court and
remand this matter for proceedings consistent with this opinion.

Factual Background

 In March of 2005, Appellant Dario Acevedo lived at Cascade Caverns ("the Caverns") with
his girlfriend, Jill Beardsley, a co-owner of the property. On March 2, 2005, Jill died of an
accidental aspirin overdose. Following Jill's death, James Kyle, the other Caverns' owner, asked
Acevedo to move from the property. On March 19, 2005, Acevedo, Kyle, Jeffrey Donofrio, and
James Mason were working on electrical boxes at the Caverns. The men spread out, Kyle and
Mason at separate posts, and Acevedo remained alone with Donofrio. Shortly thereafter, Donofrio
was fatally shot, but Acevedo claimed the shooting was accidental. 

 Evidence of the relationship between Acevedo and Donofrio is meager. The two were
acquaintances, but there is no evidence of any ill will between the two. At trial, the State focused
on Acevedo's actions immediately before and after the shooting to establish his intent to kill
Donofrio. Prior to the shooting, Acevedo appeared upset with Kyle's request that Acevedo leave
the property and take all of the couple's cats. According to Kelly Beardsly, Jill's sister, the night
before the shooting, Acevedo told her he was afraid he had ingested "too much" methamphetamine. 
The afternoon of the shooting, Acevedo was observed carrying a canvas case containing a firearm. 
When asked why he had the firearm, Acevedo stated, "I'm going to get me a couple of cats." (1) After
the shooting, Acevedo claimed he was "just messing around with [the gun] . . . [and] was going to
do some target shooting." Following the shooting, Mason called 911. Because he did not know the
address of the Caverns, Mason handed the phone to Acevedo, who disconnected the call. Witnesses
further described Acevedo as slowly "shuffling" to the front gates and failing to open the doors wide
enough for an ambulance to enter.

 Acevedo did not testify at trial. Instead, through cross-examination, defense counsel
presented Acevedo's defensive theory that the shooting was accidental, possibly due to the firearm
being dropped. Although Acevedo asserts multiple issues on appeal, we limit our opinion to the
issues of expert testimony.

Expert Testimony

 Acevedo argues the trial court erred in admitting the expert testimony of (1) Dr. Michael
Arambula regarding the possible effects of methamphetamine use on Acevedo and (2) Investigator
Luther Van Landingham regarding the latent prints and gunshot residue evidence. We review the
trial court's determination regarding expert qualifications and the admission of expert testimony
under an abuse of discretion standard of review. Lagrone v. State, 942 S.W.2d 602, 616 (Tex. Crim.
App. 1997).

 A. Dr. Michael Arambula

 During the trial, Kelly testified that Acevedo confided in her, the day before the shooting,
regarding his use of crystal methamphetamine saying it helped him "focus." She testified that he told
her "I have taken some and I think I have taken too much." No further details regarding the drug use
were offered. The defense cross-examined Kelly regarding her lack of knowledge on when the drug
was taken, how the drug was ingested, and how much was taken. (2) The State subsequently called
Dr. Michael Arambula, a psychiatrist and pharmacist, to testify regarding the effects of crystal
methamphetamine. After establishing Arambula's expertise, the State proceeded to question
Arambula using hypothetical questions:

 STATE: Hypothetically, if an individual uses too much methamphetamine at
approximately 8:00 or 9:00 p.m., would he still have the
methamphetamine in his system the next day, March 19th, at
approximately 4:00 p.m.?


 ARAMBULA: Probably.

Arambula testified that a "hypothetical individual" taking a hypothetical 1,000 milligrams of
methamphetamine, a "street dose," would have 500 milligrams in his system fifteen hours later. 
Arambula then testified regarding the effects of methamphetamine on the hypothetical user's body
and mind, including outward signs of methamphetamine use. Arambula listed several effects of
crystal methamphetamine on the user: a feeling of alertness; possible anxiety and impulsiveness;
mood instability; and possible aggressiveness. He further described "mood instability" as "feeling
good and then switch[ing] quite rapidly, depending on what the circumstances are and the situation
that they're in."

 Arambula explained that the visibility of these effects would vary from person to person,
depending on "the dose . . . and how often the person has been taking it, [and] how accustomed they
are to the amount of drug that they are taking." If a person "has already used [methamphetamine]
before or if the dose is not too high," the outward signs of use might be minimal. Arambula admitted
that he did not know how much Acevedo ingested and never treated Acevedo. At the conclusion of
Arambula's testimony, the defense objected and moved to strike Arambula's testimony as lacking
probative value, being irrelevant, and for failing to apply the facts of the case. The trial court denied
the motion.

 1. Waiver

 The State contends Acevedo waived his complaint about the testimony of Arambula by not
objecting to the reliability of Arambula's testimony until after cross-examination, rather than at the
time Arambula testified on direct. To preserve error for appellate review, the complaining party
must make a timely and specific objection at the earliest possible opportunity. Tex. R. App. P. 33.1;
Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). A specific objection regarding
expert testimony must detail the particular deficiency in the expert's qualifications or the reliability
of the expert's opinions. See Chisum v. State, 988 S.W.2d 244, 250 (Tex. App.--Texarkana 1998,
pet. ref'd). 

 Here, Acevedo specifically objected to the reliability of Arambula's testimony following
cross-examination, during which Arambula testified that he had no idea how much
methamphetamine Acevedo took, he had never seen Acevedo, that he was retained the evening
before he testified and notably "as far as this case . . . I'm here hypothetically." (3) After Acevedo's
attorney cross-examined Arambula, he lodged the following objection:

Judge, at this time we would move to strike Dr. Arambula's testimony as not being
probative or relevant to anything in this case. He testified to hypotheticals and had
no information based on the testimony as to how to even couch the dates or times or
use of the methamphetamine, so it was a hypothetical that was purely speculative, not
even based on general facts where he could testify to a reasonable degree of medical
certainty that there was methamphetamine in his system at the time.


He did not testify to any reasonable degree of medical certainty, nor did he give any
testimony that [Acevedo], based on the testimony of this case or anything he knew
about this case, had meth in his system at 4:00 o'clock on March 19th of 2005.


 An objection of unreliability based on lack of facts or data is distinct from an objection based
on an expert's lack of qualifications and each should be evaluated independently. Although the
Court of Criminal Appeals and other appellate courts have addressed the timeliness of objections
involving qualification in prior criminal cases, we have not found a case involving the timeliness of
an objection to the expert's reliability.

 Texas Rule of Evidence 705(a) provides that "[t]he expert may in any event disclose on direct
examination, or be required to disclose on cross-examination, the underlying facts or data" that
support his opinion. Tex. R. Evid. 705(a). Here, the complete absence of underlying facts and data
for Arambula's testimony on direct were only made known during cross-examination. Arambula
was retained by the State the night before his appearance. Thus, defense counsel was unaware of the
substance of his testimony. During cross-examination, defense counsel solidified that, other than
Kelly's comment, Arambula had no underlying data or information regarding Acevedo or his
methamphetamine use. Because Acevedo's counsel objected after Arambula's testimony, and
nothing prevented the State from either responding to the objection or recalling Arambula, we
conclude the defense's objection following cross-examination was timely.

 


 2. Analysis

 Acevedo's objections to Arambula's testimony are essentially based on the requirements of
Texas Rule of Evidence 702. The trial court may admit expert testimony "[i]f scientific, technical,
or other specialized knowledge will assist the trier of fact to understand the evidence or to determine
a fact in issue." Tex. R. Evid. 702. For the testimony to be admissible, the proponent of expert
testimony must establish: (1) the expert is qualified to render an opinion on the subject matter and
(2) the testimony is relevant and based on a reliable foundation. Id.; E.I. du Pont de Nemours and
Co., Inc. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995). The proponent of the scientific evidence
has the burden of demonstrating by clear and convincing evidence that the evidence is reliable. 
Jackson v. State, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). 

 Because Arambula's qualifications were not at issue, we need only address his testimony's
relevance to the issues in the case and its reliability. In this case, these two concepts are intertwined. 
Arambula's unsubstantiated testimony is both unreliable and irrelevant. Expert testimony is
unreliable if it is not grounded "in the methods and procedures of science" and is no more than
"subjective belief or unsupported speculation." Robinson, 923 S.W.2d at 557 (quoting Daubert v.
Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993)). 

 In evaluating expert testimony, the trial court must "assess whether the expert made an
adequate effort to tie the relevant facts of the case to the scientific principles about which he
testified." Morales v. State, 32 S.W.3d 862, 866 (Tex. Crim. App. 2000). If the expert does not tie
the facts to his expert testimony, the testimony is neither helpful nor admissible. See Griffith v.
State, 983 S.W.2d 282, 287-88 (Tex. Crim. App. 1998); see also Rousseau v. State, 855 S.W.2d 666,
686 (Tex. Crim. App. 1993). 

 Acevedo claims Arambula's testimony was speculative and therefore, irrelevant and
unreliable because it was not sufficiently tied to the facts of the case. Several courts have found
expert testimony speculative and unreliable when the testimony is not sufficiently tied to the facts
of the case. In Mata v. State, 46 S.W.3d 902, 915-17 (Tex. Crim. App. 2001), the court examined
the science of retrograde extrapolation, a technique used to estimate the level of blood alcohol
content at the time of an intoxication offense. In its analysis, the Mata court made clear that the
expert's testimony "must be sufficiently tied to the facts of the case that it will aid the jury in
resolving a factual dispute." Id. at 908. The expert's testimony in Mata was unreliable in part
because the expert did not know a single personal characteristic of Mata from which to calculate
blood alcohol content. Id. at 917. The expert was unaware of Mata's weight, what he had eaten or
the time of his last drink. Id.

 Likewise, in DeLarue v. State, 102 S.W.3d 388, 400-02 (Tex. App.--Houston [14th Dist.]
2003, pet. ref'd), the reliability of the State's evidence pertaining to the presence of marijuana in
DeLarue's system at the time of the accident in question was at issue. The court noted that the
failure to extrapolate a controlled substance to the time of the accident could render the evidence
insufficient under a Rule 403 analysis. Id. at 401. The court further explained that "no attempt was
made to quantify the presence; no attempt was made to show when the marijuana was introduced into
his system; no attempt was made to show appellant was 'under the influence' of the marijuana at the
time of the accident; and no attempt was made to show causation between appellant's behavior and
the presence of marijuana in his system." Id.

 In the present case, much like the experts in Mata and in DeLarue, Arambula did not tie the
science to the facts of this case. Arambula testified that he did not know any of the particular facts
of this case. More specifically, Arambula possessed no information regarding: how much, or
precisely what, Acevedo ingested and when; Acevedo's individual characteristics at the time of the
incident; Acevedo's previous drug use, his tolerance for methamphetamine; or what Acevedo may
have eaten during the previous twenty-four hours. Arambula's use of hypotheticals unrelated to the
facts negates the probative value of his testimony.

 We conclude Dr. Arambula's testimony was merely speculative and, thus unreliable and
irrelevant. An expert testifying to the effects of methamphetamine on a given individual must know
more about the individual and quantity ingested than evidenced by Arambula's testimony. 
Accordingly, we conclude the trial court abused its discretion in admitting Arambula's testimony
because it was unreliable and irrelevant to the case at bar.

 3. Harm

 In accordance with Rule 44.2(b), our analysis of the harm associated with the erroneous
admission of expert testimony considers everything in the record, including the evidence admitted,
the jury instructions, the State's theory, defensive theories, closing arguments, and voir dire. Motilla
v. State, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002). Important factors are "the nature of the
evidence supporting the verdict, the character of the alleged error and how it might be considered
in connection with other evidence in the case." Id. at 355. More specifically, the reviewing court
should consider whether the State emphasized the error, whether the erroneously admitted evidence
was cumulative, and whether it was elicited from an expert. Id. at 356. 

 Here, Acevedo's defense rested on whether the shooting was an accident. The record
contains no testimony regarding a conflict between Acevedo and Donofrio. Acevedo's defense was
that the shooting was an accident. It is noteworthy that although a prosecutor ordinarily need not
prove motive as an element of a crime, the absence of an apparent motive may make proof of the
essential elements of a crime less persuasive. See Reid v. State, 964 S.W.2d 723, 730 (Tex.
App.--Amarillo 1998, pet. ref'd) (determining that expert testimony on Munchausen Syndrome by
Proxy was relevant in murder trial to explain mother's alleged conduct and show mother's motive
for allegedly causing death of infant child). Such is the present case. Based on the information
before the jury, the murder ascribed to Acevedo was difficult to explain and gave his accident
defense some credibility. As such, Arambula's testimony of Acevedo's drug use would, if accepted
by the jury, bridge that gap. 

 During its closing argument, the State spent considerable time arguing that Acevedo was
under the influence of methamphetamine at the time of the shooting. The State argued that
Arambula's testimony supplied the motive for the murder. Specifically, the State argued:

Dr. Arambula came in to tell you about the effects of meth, and I called him because
most of you probably have - are not familiar with methamphetamine and because you
needed to know what the effects of this methamphetamine are, because [defense
counsel] says, 'But there's not motive.' Well, I think Dr. Arambula explains that. 
People are irritable, they're aggressive, they do things without thinking. That's why
you take a gun out and you kill somebody when there's other people around, but, you
know, you're not thinking real clearly, so you wait until they're gone. . . . That
explains it. The methamphetamine use explains it, . . . .


The State clearly emphasized Arambula's testimony to the jury. Arambula was the only witness to
testify regarding the effects of methamphetamines and that Acevedo possibly had methamphetamines
in his system at the time of the murder. After examining the entire record, we cannot say that
Arambula's testimony "did not influence the jury, or had but a slight effect" and thus did not affect
Acevedo's substantial rights. Tex. R. App. P. 44.2(b). We therefore sustain this appellate issue.

 Although this issue is dispositive, we address additional issues raised by Acevedo that are
capable of repetition. Tex. R. App. P. 47.1.

 B. Investigator Van Landingham

 On appeal, Acevedo also asserts the trial court abused its discretion by admitting the expert
testimony of Investigator Luther Van Landingham regarding gunshot residue and fingerprint analysis
because he was unqualified and his testimony was in violation of the Confrontation Clause.

 1. Qualifications

 Acevedo objected to the testimony of Van Landingham regarding the gunshot residue
("GSR") report. The testimony, however, was no more than reading a report already in evidence. 
Prior to the admission of the GSR report, defense counsel's sole objection was that the GSR report
contained a "conclusory averment." The trial court admitted the GSR report, and limited Van
Landingham's testimony to the contents of the report. In this case, Van Landingham only testified
that the GSR report contained certain statements (the absence of gunshot residue) and did not
provide any additional opinion testimony regarding the "science" of gunshot residue. Once admitted
into evidence, a party may read the document into evidence. Wheatfall v. State, 882 S.W.2d 829,
837-38 (Tex. Crim. App. 1994). Simply reading from a report already admitted into evidence is not
providing opinion testimony. Id. Acevedo simply mischaracterizes Van Landingham's testimony
regarding the gunshot residue. Van Landingham did not offer expert testimony relating to the
science of gunshot residue and the trial court did not abuse its discretion in allowing Van
Landingham to confirm the contents of the GSR report. We now turn to the latent print report and
Van Landingham's testimony regarding latent prints.

 Van Landingham testified that the latent prints report substantiated that "[n]o latent prints
evidence suitable for identification [was] developed." Upon defense objection that Van Landingham
was not qualified as an expert, the following transpired:

State: Okay, and does no suitable latent prints meant that there with
(sic) no prints whatsoever on an item?


Van Landingham: I would have to refer to hypothetical, crime scenes that I 

 have - 


 (Defense objection regarding qualifications overruled by the trial court.)


State: Approximately how many times have you, yourself, personally
lifted latent prints at (sic) crime scene.


Van Landingham: Several hundred times.


State: Have you had training in that area?


Van Landingham: Yes.


State: Okay. Just briefly describe for the jury your training?


Van Landingham: Well, when I started this job, I was - I was given training at the
- in the academy. I have had about - three years ago we went
to an in-service class on identifying fingerprints, not necessarily
classifying fingerprints, but identifying fingerprints.


 Van Landingham's testimony exhibited his training and experience with regard to collecting
fingerprint evidence. See Matson v. State, 819 S.W.2d 839, 851-52 n.10 (Tex. Crim. App. 1991)
(confirming that "[n]o rigid formula exists for determining whether a particular witness is qualified
to testify as an expert. A witness may be qualified by reason of knowledge, skill, experience, or
training, regardless of its source."); Wilson v. State, 195 S.W.3d 193, 200 (Tex. App.--San Antonio
2006, no pet.) (noting that Rule 702 does not provide a bright line test as to whether expert testimony
is admissible). Van Landingham's testimony was limited to the characteristics necessary for suitable
identification, including why a particular individual may not leave suitable prints. As someone
trained and experienced in lifting latent fingerprints, Van Landingham's area of expertise included
knowledge of the characteristics of a fingerprint and what makes certain prints more suitable for
analysis. Accordingly, we are unable to conclude that the trial court abused its discretion in
admitting Van Landingham's testimony. 

 2. Confrontation Clause

 Acevedo contends the trial court's admission of hearsay statements denied him the
opportunity to confront witnesses against him. Acevedo specifically asserts that the admission of
the GSR report and the latent print report violated his right to confrontation.

 The United States and Texas Constitutions guarantee an accused the right to be confronted
with the witnesses against him. U.S. Const. amend. VI; Tex. Const. art. I, §10; Davis v. Alaska,
415 U.S. 308, 315 (1974). We review alleged violations of the Confrontation Clause de novo. See
Wall v. State, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006).

 The Confrontation Clause bars the admission of testimonial statements of a witness not
appearing at trial unless (1) the witness is unavailable to testify and (2) the defendant had a prior
opportunity to cross-examine him. Crawford v. Washington, 541 U.S. 36, 59 (2004). Generally, a
statement is considered "testimonial" if it is a "solemn declaration made for the purpose of
establishing some fact." Russeau v. State, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). 

 In Crawford, the Supreme Court stated that there were various formulations of the core class
of "testimonial" statements, which included: (1) "ex-parte in-court testimony or its functional
equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the
defendant was unable to cross-examine, or similar pretrial statements that declarants would
reasonably expect to be used prosecutorily," (2) "extrajudicial statements . . . contained in formalized
testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3)
"statements that were made under circumstances which would lead an objective witness reasonably
to believe that the statement would be available for use at a later trial." Crawford, 541U.S. at 51-52. 
More recently, the Supreme Court held statements "are testimonial when the circumstances
objectively indicate that there is no such ongoing emergency, and that the primary purpose of the
interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 
Davis v. Washington, 126 S. Ct. 2266, 2273-74 (2006). Here, the reports were prepared as a result
of an alleged crime and would be available for use at a later trial. Thus, the reports implicate the
common nucleus of the various formulations provided in Crawford. 

 


 a. The Reports

 Both the GSR and the latent prints reports to which Van Landingham testified were prepared
by a person who did not appear at trial. During cross-examination, defense counsel marked both
reports as exhibits, but did not offer either report into evidence. On redirect, the State offered the
reports into evidence. With regard to the latent print report, the defense argued the report contained
a "conclusory averment that is highly prejudicial" (the report indicated the incident was a homicide)
and denied Acevedo an opportunity to cross-examine the report's author. When the State offered
the GSR report, Acevedo did not raise a Confrontation Clause objection, only that the report
contained the same "conclusory averment." 

 To preserve denial of a right to confrontation error, one must specifically object based on the
Confrontation Clause. Holland v. State, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991); Deener v.
State, 214 S.W.3d 522, 527 (Tex. App.--Dallas 2006, pet. ref'd). Because Acevedo's trial objection
regarding the GSR report was not based on a violation of the Confrontation Clause, no error is
preserved. Tex. R. App. P. 33.1. We, therefore, address only the latent print report. 

 b. Testimonial in Nature 

 The State argues that because autopsy reports have been admissible as nontestimonial
statements, the latent print report is similarly nontestimonial. We disagree. Unlike an autopsy report
which contains "matters observed pursuant to a duty imposed by law" and are therefore considered
nontestimonial for Crawford purposes, the primary purpose of the latent print report was to establish
or prove past events potentially relevant to later criminal prosecution. Grant v. State, 218 S.W.3d
225, 230-31 (Tex. App.--Houston [14th Dist.] 2007, pet. ref'd) (reiterating that "the difference
between testimonial and non-testimonial statements [is] dependent in part on the extent to which the
statements are a sterile recitation of facts or a subjective narration of events related to the appellant's
guilt or innocence"); Moreno Denoso v. State, 156 S.W.3d 166, 180 (Tex. App.--Corpus Christi
2005, pet. ref'd) (recognizing that "medical examiners are not considered 'other law enforcement
personnel' under Rule 803(8)(B) as far as their duties relate to the preparation of autopsy reports."). 
Thus, although the report does not accuse Acevedo of wrongdoing, it potentially provided factual
evidence to support his conviction. We, therefore, conclude the latent print report is testimonial in
nature. See Russeau, 171 S.W.3d at 880-81 (holding jailers' reports were testimonial in nature and
violated the defendant's constitutional rights). Because the author of the report was unavailable at
trial and Acevedo had no prior opportunity to cross-examine him, the Confrontation Clause barred
its admission and the trial court erred in admitting the same.

 c. Harm

 Denying a defendant's right to confront witnesses is constitutional error and an appellate
court must reverse the conviction absent a determination, beyond a reasonable doubt, that the error
did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a); see also Wesbrook v.
State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). "We consider the source and nature of the error,
the extent that it was emphasized by the State, its probable collateral implications, the weight a juror
would probably place on the error, and whether declaring it harmless would likely encourage the
State to repeat it with impunity." Wimbrey v. State, 106 S.W.3d 190, 193 (Tex. App.--Fort Worth
2003, pet. ref'd). Additionally, we review the entire record in a neutral manner. Id.

 The latent print report contains the pertinent case information, a list of evidence submitted
for analysis, the request for examination and comparison of prints, and a section stating the
fingerprint cards are being returned. We note that the report was first identified by the defense. 
During cross-examination, defense counsel elicited testimony that no suitable prints were found on
the firearm. Although the defense did not introduce the report into evidence, the testimony regarding
the lack of fingerprints was presented to the jury by Acevedo's counsel. Therefore, the only
questionable testimony elicited by the State, from the report, was the same information previously
elicited by defense counsel. The State did not emphasize the latent print report during the
examination of other witnesses or closing argument. Although the report did classify Donofrio's
death as a homicide, the jury obviously knew the State considered Donofrio's death a murder. Given
that the admission of the report did not reveal anything more than what was already known to the
jury, it is difficult to see how the error contributed to Acevedo's conviction. Acevedo admitted to
shooting Donofrio, but claimed it was an accident. Acevedo's defensive theory is not one of identity,
but one of intent. Accordingly, the record supports, beyond a reasonable doubt, that the error did not
contribute to the defendant's conviction or punishment. We overrule this appellate issue. See Tex.
R. App. P. 44.2(a). 

 In accordance with Texas Rule of Appellate Procedure 47.1, we need not address the
remaining issues. See Tex. R. App. P. 47.1 (encouraging concise opinions addressing only those
issues "necessary to final disposition of the appeal").


Conclusion

 Although the trial court violated the Confrontation Clause in admitting the latent print report,
we conclude, beyond a reasonable doubt, that the error did not contribute to Acevedo's conviction. 
The trial court did, however, abuse its discretion in admitting Arambula's expert testimony on the
effects of methamphetamines and, after a review of the entire record, we cannot conclude the error
did not affect his substantial rights. Accordingly, the judgment of the trial court is reversed and this
cause is remanded to the trial court for proceedings consistent with this opinion.


 Rebecca Simmons, Justice


Publish


 








 
1. Mason testified regarding Acevedo having to "get rid" of many of the cats owned by Acevedo and Jill
Beardsley. However, because some of the cats were sick, Mason and Acevedo discussed the fact that at least some of
the cats were going to have to be euthanized.
2. Acevedo's trial counsel objected to Kelly's testimony arguing the same was evidence of an extraneous offense. 
Because Kelly's testimony was conditionally admitted based on Arambula's testimony, and we have determined
Arambula's testimony was improperly admitted, we do not further address the admission of Kelly's testimony.
3. Defense counsel made a variety of objections during Arambula's direct examination including an objection
based on lack of notice, the speculative nature of Arambula's testimony and Arambula's inability to testify based on
reasonable medical probability.