Jermaine Andre GRANT, Appellant

v.

The STATE of Texas, Appellee.

No. 14–05–00381–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 8, 2007.

Discretionary Review Refused June 13, 2007.

Nicole Wignall Deborde, Houston, for appellants.

Jessica A. McDonald, Houston, for appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this appeal of his conviction for aggravated robbery, appellant Jermaine Andre Grant argues the trial court twice violated his state and federal constitutional rights to confront the witnesses against him, and improperly denied his motion for mistrial after the prosecution alluded to his failure to testify. We hold that appellant waived his first confrontation clause complaint, and although we agree that the trial court erred in admitting testimonial statements contained in appellant's high school disciplinary records, we conclude the error was harmless beyond a reasonable doubt. We further hold that the trial court cured any error arising from the prosecution's statement by immediately instructing the jury to disregard it. Thus, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant does not challenge the factual or legal sufficiency of the evidence. Therefore, we recite only those facts necessary for our analysis.

On July 19, 2004, appellant approached two women and two men chatting in the driveway of a townhouse in Alief. He demanded their wallets and purses, and threatened them with a shotgun. When none of the four was able to produce any money, he led them inside the townhouse so that one of the women could retrieve her purse. Appellant then directed them back outside, ordered them into one of the parked vehicles, and fled on foot after confiscating several cell phones. Appellant was indicted for the aggravated robbery of one of the women.

All four of the eyewitnesses testified at trial, and three of them positively identified appellant as the robber. Appellant's trial counsel attempted to elicit testimony from Officer Turner, the responding officer, that the version of events the eyewitnesses related on the night of the robbery differed from that provided at trial. However, the judge sustained the State's objections that the answers to defense counsel's questions called for hearsay and speculation. The jury convicted appellant of the charged offense.

In the punishment phase of trial, the State presented evidence indicating that appellant and several other young men essentially terrorized the city of Alief during the summer of 2004. Typically, their victims were lone Asian women who were approached in their driveways.[1] Some of the victims spoke no English. According to the testimony, these women were prime targets due in part to perceived cultural mores that would make them less likely to report the crime or participate in the investigation.

The State also presented evidence of appellant's behavior during these offenses. According to the evidence presented, appellant commonly brandished a firearm, demanded money, and usually took any cell phones present. On one occasion, when a husband and wife did not provide money quickly enough, appellant put a pistol to the neck of the couple's one-year-old son until the couple was able to provide cash. On another occasion, appellant threatened to kill a victim's young sister. At other times, appellant placed a gun to the victim's temple or forehead.

Other testimony admitted concerned appellant's propensity for violence and threats. High school student C.D.[2] testi-

---

1. The complainant and her three companions in this case were Vietnamese.

2. We assume that this witness is under the age of seventeen, and identify him by his initials.

fied that appellant mistook him for C.D.'s brother, with whom appellant had been in an altercation. C.D. testified that the day following the altercation, appellant saw C.D. in an apartment parking lot taking out the trash and drove up behind him with a group of other males. Appellant then got out of his car, brandished a firearm and threatened to kill C.D.

The State also introduced appellant's high school disciplinary records over appellant's objections. The records list the date of alleged disciplinary infractions, the reporting teacher or administrator, the name of the assistant principal responsible for the student, the alleged infraction, the punishment meted out, and a description of the events that led to the punishment. Some of the descriptions provided quotations or the observer's perceptions of actions, attitudes, or language used. Some of the descriptive entries were:

- Jermaine told Ms. Katsaros "Damn, Leave me alone" Plus other obscenities
- name calling, profanity, pushing, shoving, in No. Gym "I will slap you side your bitch head"
- using profanity in DH "ass" was told to leave, instead stayed and used profanity again
- would not remain quiet . . . disruptive . . . took pen away from student. . . . Would not return given library pass and refused to go to finish work
- student stole referral off of secretary's desk
- Repeatedly drinking in class after being ref'd to AP by teacher in the past
- disruptive very loud in class saying inappropriate things
- left class to talk to student in hallway told him to get back to his seat he said that tea. should get back into class
- insubordiant [sic] trying to talk to another student Jermaine kept inter-

rupting and would not stop talking & would not sit down
- wandering halls disturbed class twice threw a pen at a student
- instead of being in the gym he was at the SAC room. He told Ms. Harper that he was not going to get into trouble

During its closing argument in the punishment phase of trial, the State told the jury, "You looked through this whole entire trial. You look at Jermaine Grant's face. You have heard all the testimony. Did you ever see any sorrowness or remorse?" Appellant objected on the ground that the State improperly commented on appellant's failure to testify. The trial court sustained the objection and instructed the jury to disregard this argument, but refused to grant a mistrial.

At the close of the punishment phase of trial, the jury sentenced appellant to thirty years' confinement.

## II. ISSUES PRESENTED

Appellant presents three issues for review. First, he contends that the trial court violated the Confrontation Clause when it sustained the State's objections to appellant's questioning of Officer Turner regarding potentially conflicting witness statements. Second, appellant argues that the trial court violated the Confrontation Clause when it admitted appellant's high-school disciplinary records. In his final issue, appellant contends the trial court erred by denying his motion for a mistrial on the grounds that the State purportedly alluded to appellant's invocation of his right not to testify.

## III. ANALYSIS

### A. WAIVER OF APPELLANT'S FIRST CONFRONTATION CLAUSE ISSUE

In his first issue, appellant complains that the trial court violated his

federal and state constitutional rights to confront the witnesses against him. Appellant attempted to elicit testimony from Officer Turner to undermine the witnesses' credibility and show that their memories had faded. The State objected on hearsay grounds and the trial court sustained that objection. Although he did not raise any confrontation clause issue below, on appeal he complains the trial court violated his State and federal rights to confront the witnesses against him. However, because appellant failed to object on this basis at trial, the argument is waived on appeal. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex.Crim.App. 2000); *see also Eustis v. State*, 191 S.W.3d 879, 884 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd). We therefore overrule appellant's first issue.

**B. THE HIGH SCHOOL DISCIPLINARY RECORDS**

■ Appellant next challenges the admission of his high school disciplinary records during the punishment phase of trial, arguing that the admission of these records violates both his State and federal constitutional rights to confront the witnesses against him. However, at trial, appellant's objection on confrontation clause grounds is limited to the statement, "I think you got *Crawford* questions there. Because he doesn't have his right to confront that witness." We interpret this objection as raising objections under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court's opinion in *Crawford* addressed only the right to confrontation guaranteed by the United States Constitution; thus, appellant's trial objection did not challenge the admission of the evidence on the basis that such admission violated his confrontation rights under the Texas Constitution. Moreover, appellant did not brief this issue on appeal. Accordingly, the question of whether the admission of the records violated appellant's State constitutional rights is waived. *See Russeau v. State*, 171 S.W.3d 871, 881 (Tex.Crim.App.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 2982, 165 L.Ed.2d 990.

**1. Governing Law Regarding Crawford "Testimonial Statements"**

■ To resolve appellant's second issue, we must further interpret the meaning of "testimonial statements" in the wake of *Crawford*. In *Crawford*, the Supreme Court held that it was a violation of the Sixth Amendment to the United States Constitution to admit testimonial statements of a witness who did not appear at trial unless that witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. 541 U.S. at 68, 124 S.Ct. at 1374. The right of confrontation applies only to "witnesses" against the accused, defined as "those who 'bear testimony.'" 541 U.S. at 51, 124 S.Ct. at 1364 (citing 2 N. WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)). The right further applies only to "testimony," defined as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* The right is not avoided simply by admitting the evidence under an exception to the hearsay rules. *See id.*, 541 U.S. at 55–56, 124 S.Ct. at 1366–67. The Supreme Court did not, however, provide a comprehensive definition of the phrase "testimonial statement." *See id.*, 541 U.S. at 68, 124 S.Ct. at 1374.

After *Crawford* was decided, the Court of Criminal Appeals provided some additional guidance in *Russeau, supra*. In *Russeau*, the court determined whether admission of the appellant's disciplinary records and incident reports from state and county jail facilities violated his federal rights under the Confrontation Clause.

*Russeau,* 171 S.W.3d at 880. The reports at issue documented the appellant's disciplinary infractions "in the most detailed and graphic of terms" and were based on the corrections officers' own observations or the observations of others. *Id.* The court held that the records contained testimonial statements, which were inadmissible because the State did not show that the declarants were unavailable to testify, and the defendant had not had an opportunity to cross-examine any of them. *Id.* at 880–81. Like the Supreme Court in *Crawford,* the court noted that a statement is generally testimonial if it is "a solemn declaration made for the purpose of establishing some fact." *Id.* at 880 (citing *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364).

Almost four months later, this court decided *Ford v. State,* 179 S.W.3d 203 (Tex. App.-Houston [14th Dist.] 2005, pet. ref'd), *cert. denied,* —— U.S. ——, 127 S.Ct. 281, 166 L.Ed.2d 215 (2006). In *Ford,* we noted that *Crawford* provided three formulations for "core" testimonial evidence: (1) ex parte in-court testimony or its functional equivalent such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extrajudicial statements of the same nature contained in formalized testimonial materials; and (3) statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.* at 208 (citing *Crawford,* 541 U.S. at 51–52, 124 S.Ct. at 1364) (quotations omitted). Yet, as we have already discussed, these formulations were not intended to be exclusive, as the Supreme Court declined to provide a comprehensive framework or definition for evaluating potentially testimonial statements. We held that the disciplinary records at issue did not contain testimonial

statements because, unlike the records in *Russeau,* the records in *Ford* merely recited appellant's offenses and the punishments he received for those offenses. Those recitations were not graphic, and were devoid of any detail. *Id.* at 209. Moreover, the records did not narrate the events or the observations of the declarant or others. Although this point was not specifically emphasized in *Ford,* it was nevertheless readily apparent in our quotation of the records themselves.

Other courts have attempted to distinguish our interpretation of admissible non-testimonial statements in *Ford* from the inadmissible testimonial statements described by the Court of Criminal Appeals in *Russeau.* The Twelfth Court of Appeals reasoned that the difference between the evidence at issue in *Ford* and *Russeau* is the inclusion or omission of observations by those making the entries. *See Henderson v. State,* No. 12–05–00268–CR, 2006 WL 1791596, at *6 (Tex.App.-Tyler June 30, 2006, no pet.) (mem. op., not designated for publication). The Fourth Court of Appeals similarly determined that the difference between the records in *Ford* and *Russeau* is that the records in *Ford* were simply objective recitations of historical facts, whereas the records in *Russeau* contained subjective observations. *See Nieschwietz v. State,* No. 04–05–00520–CR, 2006 WL 1684739, at *6 (Tex.App.-San Antonio June 21, 2006, pet. ref'd) (mem. op., not designated for publication). An intermediate Colorado court of appeals stated that the holding in *Russeau* turned on the existence of "detailed descriptive information that would typically be presented through narrative testimony." *People v. Hinojos–Mendoza,* 140 P.3d 30, 37 (Colo. Ct.App.2005), *cert. granted,* No. 05SC881, 2006 WL 2338141.

We take this opportunity to clarify that the distinction between the admissible

statements quoted in *Ford* and the inadmissible statements described in *Russeau* is not simply the inclusion or omission of "detailed and graphic" personal observations. *See Russeau*, 171 S.W.3d at 880. If this were the primary distinction, then the often detailed and graphic observations of medical examiners as stated in autopsy reports would be considered testimonial, yet this is not the case. *See, e.g., Mitchell v. State*, 191 S.W.3d 219, 221–22 (Tex.App.-San Antonio 2005, pet. ref'd) (holding that autopsy reports are non-testimonial business records); *Denoso v. State*, 156 S.W.3d 166, 182 (Tex.App.-Corpus Christi 2005, pet. ref'd) (holding that an autopsy report containing "matters observed pursuant to a duty imposed by law" is non-testimonial for *Crawford* purposes). Rather, in *Ford*, we conceptualized the difference between testimonial and non-testimonial statements as dependent in part on the extent to which the statements are a sterile recitation of facts or a subjective narration of events related to the appellant's guilt or innocence. In *Ford*, the statements in the disciplinary reports were objective statements that particular punishments were assessed for the identified disciplinary infractions by the appellant; they were not narratives by witnesses against the appellant relating to his guilt or innocence of the infractions described. Consequently, the statements were non-testimonial. *See Dowdell v. United States*, 221 U.S. 325, 330–31, 31 S.Ct. 590, 55 L.Ed. 753 (1911) (holding that facts regarding conduct of prior trial, as certified by the judge, the clerk of court, and the official reporter, did not relate to defendant's guilt or innocence and hence were not statements of "witnesses" under the Confrontation Clause). In contrast, the statements in *Russeau* contained subjective narrations of the very actions by the appellant that constituted the offenses for which he was punished. Thus, the presence or absence of a subjec-

tive narration of events related to the appellant's guilt or innocence is a significant difference between the statements at issue in *Russeau* and *Ford*.

The United States Supreme Court recently provided further illumination on the difference between testimonial statements and non-testimonial statements in *Davis v. Washington*, —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). In *Davis*, the Court clarified that not all statements made in response to police interrogation are testimonial:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 2273–74. Although neither *Russeau* nor *Ford* discussed the purpose of the statements at issue, the Supreme Court in both *Crawford* and *Davis* emphasized that the purpose of a testimonial statement is to establish or prove that some fact is true or some event occurred. Consequently, the Court instructs us that when the purpose of an interrogation by law enforcement personnel is "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," the statements resulting from the interrogation are testimonial. *Davis*, 126 S.Ct. at 2276. Moreover, the same analysis applies to statements that are volunteered rather than those elicited by interrogation. *Id.* at 2274 n. 1 ("The Framers were no more willing to exempt from cross-examination volun-

teered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.").

Here, the statements at issue are not intended to establish the facts of past crimes, but to document violations of high school disciplinary rules, although some of the incidents forming the basis of the violations, if prosecuted and proved, would constitute serious crimes such as assault. However, under *Russeau* and *Ford,* we apply the same *Crawford* analysis to descriptions of violations of disciplinary rules that we apply to descriptions of crimes. We therefore review the records at issue to determine whether the narrative descriptions of disciplinary offenses were made by witnesses against appellant for the purpose of establishing that the identified infractions of school rules actually occurred.

**2. Records Contain Some Testimonial Statements**

■ The statements at issue here may be characterized as falling somewhere between the graphic and detailed testimonial statements described in *Russeau* and the sterile recitations of fact quoted in *Ford.* To place the statements in context, it is helpful to note that the records containing the statements consist of nearly ten pages of listed school disciplinary problems. While some of the infractions listed simply state the date, the offense, the reporting authority, and the punishment without elaboration, others are more detailed and contain descriptions of appellant's conduct that constituted a violation of school rules.[3]

**3.** The portions of records simply listing the alleged disciplinary infraction, the punishment received, the dates of the offenses or punishments, and the names of the school authorities involved are not at issue. Our holding in *Ford* clearly governs those aspects of the school records. Statements in the records that were made by the same school administrator who testified at trial are also not

Some entries quote profane language appellant allegedly used or describe sequences of events resulting in punishment. The incidents range from class disruption to theft and assault. Although all of the descriptions are brief, and thus, arguably are not the type of detailed, graphic statements described in *Russeau,* length is not determinative; rather, our focus is on the purpose and content of the statements.

After careful review, we hold that many of the entries in the records contain testimonial statements. Specifically, the descriptions of appellant's behavior and quotations of language he used are not intended merely to establish that appellant committed a disciplinary infraction, but to establish that he violated school rules by engaging in the specific behavior described. *Compare Russeau,* 171 S.W.3d at 880 (holding that corrections officers' personal or second-hand observations of appellant's offenses, described in detailed and graphic terms, are testimonial) *with Ford,* 179 S.W.3d at 209 (holding that jail disciplinary records that "are sterile recitations of appellant's offenses and the punishments he received" are non-testimonial). Because the State did not show that the various teachers and school administrators who provided these statements were both unavailable to testify and had been cross-examined previously, we hold the trial court erroneously admitted the testimonial portions of these records.

**3. Error was Harmless Beyond a Reasonable Doubt**

at issue; because appellant had the opportunity to question the witness, his confrontation clause objection has no bearing on her statements in the records. Our holding instead is concerned only with the narrative descriptions of events and behaviors constituting the rule infractions described where those descriptions were made by a witness whom appellant had no opportunity to cross-examine.

██ Although the trial court erred in admitting this evidence, we nevertheless will affirm if we determine beyond a reasonable doubt that the harm from the error did not contribute to appellant's punishment. *Russeau,* 171 S.W.3d at 881. In determining whether error in admitting testimonial statements in violation of *Crawford* is harmless beyond a reasonable doubt, we consider:

(1) The importance of the testimonial statements to the State's case;

(2) Whether the statements were cumulative of other evidence;

(3) The presence or absence of evidence corroborating or contradicting the statements on material points; and

(4) The overall strength of the State's case.

██ *Davis v. State,* 203 S.W.3d 845, 852 (Tex.Crim.App.2006) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)). The error does not require reversal unless there is "a reasonable possibility that the *Crawford* error, within the context of the entire trial, 'moved the jury from a state of non-persuasion to one of persuasion' on a particular issue." *Id.* at 852–53 (quoting *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Crim.App.2000)).

Utilizing this test, we hold that the error was harmless beyond a reasonable doubt. First, the testimonial statements were not important to the State's case. The prosecution spent the majority of its time during the punishment phase focusing on appel-lant's string of aggravated robberies, and made little reference to the high school disciplinary records. Second, a school administrator testified concerning appellant's general behavioral problems at the high school; thus, the same general subject matter was raised elsewhere in the evidence. Additionally, the remainder of the records, with the exception of the testimonial statements, were admissible;[4] thus, properly admitted evidence that appellant committed the identified disciplinary infractions and received the stated punishments provided some corroboration of the testimonial statements, and to a lesser extent, rendered the testimonial statements cumulative of other evidence. The school administrator's testimony similarly corroborates the records generally.[5] Finally, the prosecution's case for punishment was very strong even in the absence of the testimonial statements in the school disciplinary records. The State presented compelling evidence that appellant had helped to terrorize a community for months and had threatened to kill several people, including an infant in his mother's arms. The misbehaviors described in the inadmissible portions of the high school disciplinary records are, by comparison with the strength and volume of the properly admitted evidence, inconsequential.

In light of the evidence properly before the jury, there is no reasonable possibility that the testimonial statements moved the jury "from a state of non-persuasion to one of persuasion" with regard to appellant's punishment. *See id.* We therefore overrule appellant's second issue.

---

**4.** Appellant asserted only a *Crawford* objection to the admission of the school disciplinary records; he did not argue at trial that these documents did not qualify as business records under the business records exception to the hearsay rule, nor does appellant argue on appeal that the State failed to establish that this evidence fell within that exception. Therefore, we do not address or analyze that issue in this appeal.

**5.** As previously indicated, some of the statements in the records were made by this same witness. Accordingly, appellant's Confrontation Clause objection was properly overruled with respect to statements in the records made by the testifying witness.

### C. Comment on Appellant's Demeanor

 In his final issue, appellant asserts that the trial court committed reversible error during the punishment phase of trial when it refused to grant a mistrial after the prosecutor argued to the jury: "You looked through this whole entire trial. You look at Jermaine Grant's face. You have heard all the testimony. Did you ever see any sorrowness or remorse?" Although the trial court did not grant a mistrial, it sustained appellant's objection on the ground that the statement was an improper comment on his invocation of his right not to testify. Additionally, the trial court promptly instructed the jury to disregard that statement.

 Assuming the argument was improper, an instruction from the trial court to disregard the statement normally cures any error. *See Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App.1992) (en banc). If a trial court sustains an objection to a comment, instructs the jury to disregard the statement, but denies a motion for mistrial, the issue we must determine is whether or not the trial court abused its discretion in denying the motion. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim.App.2004). A mistrial is required only when the error is incurable and "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* at 77. The error is reversible if, in light of the entire record, the jury argument was extreme or manifestly improper or injected new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000).

We hold that the statement at issue did not require a mistrial, but instead was cured by the trial court's immediate instruction to disregard. The prosecutor's statement was made at the beginning of the State's initial closing argument. The State's theme during closing argument—both in its initial closing argument, and final closing argument following appellant's closing argument—did not focus on appellant's purported lack of contrition, and made no further allusion to his decision not to testify. Rather, the State concentrated on the string of aggravated robberies and the need to restore order to a victimized and fearful community. Taken in context, the argument was not so extreme or manifestly improper that the trial court's instruction failed to cure any error. We overrule appellant's final issue.

## IV. Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.