Affirmed and Majority and Concurring Opinions filed November 29, 2007








Affirmed and Majority and Concurring Opinions filed November
29, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00351-CR

____________

 

GERRARD EUGENE DIXON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause No. 1061607

 



 

M A J O R I T Y   O P I N I O N

A jury found appellant guilty of aggravated assault and
assessed punishment at thirty-eight years= confinement.  In
three issues, appellant contends (1) the evidence is factually insufficient to
support the jury=s verdict, (2) the trial court erred in
admitting the expert testimony of a police officer, and (3) the trial court
erred in admitting testimonial hearsay during the punishment phase of his
trial.  Finding no reversible error, we affirm.  








Factual and Procedural Background

Appellant and Priscilla Smith (AComplainant@) became
acquainted and started dating during 2003.  After dating for approximately
three months, they moved in together.  On February 18, 2004, appellant accused
the Complainant of trying to obtain another man=s telephone
number.  When the Complainant denied appellant=s accusation,
appellant hit her repeatedly with his open hand, beat her with a tennis shoe,
and struck her with a baseball bat.  The next day, the Complainant received
medical treatment and gave a statement to police. 

Appellant was charged by indictment with aggravated
assault.  The indictment included two enhancement allegations, both of which
were prior convictions for aggravated assault.  Appellant pleaded Anot guilty@ to the charged
offense, and Anot true@ to the
enhancement allegations.  The jury found appellant guilty of aggravated
assault.  At the conclusion of the punishment phase of appellant=s trial, the jury
found that both enhancement allegations were true, and assessed punishment at
thirty-eight years= confinement.  

Discussion

I. 
Is the Evidence Factually Sufficient?

In his
third issue, appellant argues the evidence is factually insufficient to support
the jury=s finding that appellant intentionally
caused bodily injury to the Complainant using a baseball bat.               

A. 
Standard of Review








In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.
 First, when considered by itself, evidence supporting the verdict may be
so weak the verdict is clearly wrong and manifestly unjust.  Id.  Second,
where the evidence both supports and contradicts the verdict, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met.  Id.  In conducting a factual sufficiency review, we
must employ appropriate deference so that we do not substitute our judgment for
that of the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996).  Our analysis must consider the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 

B. 
Analysis

The Complainant testified she met appellant during the
course of her employment at a Kroger grocery store.  Appellant was a customer
in the store and he asked the Complainant for her telephone number.  The
Complainant testified she and appellant started dating during mid-2003 and
moved into an apartment together approximately three months later.  On February
18, 2004, appellant called the Complainant at her place of work and told her
that he wanted to speak with her about something when she got home.  That
evening, when she arrived home, appellant accused the Complainant of trying to
obtain another man=s telephone number.  The Complainant
testified that when she denied appellant=s accusation,
appellant slapped her and accused her of lying.  The Complainant testified she
knew appellant was going to hit her again, so she sat down on the couch and
curled up to defend herself.  The Complainant testified appellant hit her on
her head and face five or six times with his open hand.  The Complainant used
her arms to cover her face.  Appellant took off one of the Complainant=s tennis shoes and
repeatedly struck the Complainant=s arms with the
shoe.  Next, appellant retrieved a baseball bat from a closet and approached
the Complainant with the bat Aalready swung back.@  The Complainant
testified appellant swung the bat in the direction of her head and, when she
raised her arm and leg to protect her head, appellant struck the Complainant=s right leg with
the bat.  The Complainant testified appellant apologized to her and begged her
not to call the police. 








The Complainant testified she went to work the next day,
but it was difficult for her to walk or perform her job duties.  One of the
Complainant=s coworkers took her to Northwest Medical Center where
she received medical treatment and gave a statement to police.  State=s Exhibits two
through fifteen consist of photographs of the Complainant taken on February 19,
2004.  State=s Exhibits two through eight depict bruising on both
of the complainant=s arms which, the Complainant testified,
was caused by appellant striking her with a shoe.  State=s Exhibits nine
through fifteen depict a large bruise on the Complainant=s right thigh
which, the Complainant testified, was caused by appellant striking her with a
baseball bat. 

Appellant claims the jury=s verdict is
undermined by the Complainant=s testimony that after appellant assaulted
her, the Complainant and appellant began dating again and lived together in a
hotel room from approximately June to December of 2004, even though the
Complainant knew appellant was seeing other women.  Appellant further contends
the jury=s verdict is undermined
by the Complainant=s testimony that she knew a warrant had
been issued for appellant=s arrest but did not report his
whereabouts to the police until December of 2004.

Viewing all the evidence in a neutral light, we hold the
evidence supporting the verdict is not so weak that the verdict is clearly
wrong and manifestly unjust, nor is the contrary evidence so strong that the
beyond-a-reasonable-doubt standard could not have been met.  See Prible,
175 S.W.3d at 730B31.  Accordingly, the evidence is
factually sufficient to prove appellant intentionally caused injury to the
Complainant by using a baseball bat. See id.  Appellant=s third issue is
overruled.

 

 








II.       Did the
Trial Court Abuse its Discretion by Admitting the Expert Testimony of Officer
Kerry Bray?

In his second issue, appellant argues the trial court
abused its discretion by admitting the expert testimony of Officer Kerry Bray
regarding the dynamics of family violence.  Appellant contends Officer Bray was
not qualified to give expert testimony pertaining to family violence, and
further argues that Bray=s Atestimony on
family abuse dynamics just serves to bolster the complainant=s testimony.@

A.  Standard of Review

We review a trial court=s decision to
admit or exclude expert testimony for an abuse of discretion.  Ellison v.
State, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006).  A trial court abuses
its discretion when its decision lies outside the zone of reasonable
disagreement.  Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App.
2007).

B.  Applicable Law

Rule 702
provides: AIf scientific, technical, or other specialized knowledge will assist the
trier of fact to understand the evidence or to determine a fact in issue, a
witness qualified as an expert by knowledge, skill, experience, training, or
education may testify thereto in the form of an opinion or otherwise.@  Tex. R. Evid. 702.  Pursuant to Rule 702, the trial court,
before admitting expert testimony, must be satisfied that three conditions are
met: (1) that the witness qualifies as an expert by reason of his knowledge,
skill, experience, training, or education; (2) that the subject matter of the
testimony is appropriate for expert testimony; and (3) that admitting the
expert testimony will actually assist the fact finder in deciding the case.  Alvarado
v. State, 912 S.W.2d 199, 215B16 (Tex. Crim.
App. 1995).  The proponent of the expert testimony bears the burden of proving
the expert=s qualifications.  Perez v. State, 113 S.W.3d
819, 832 (Tex. App.CAustin 2003, pet. ref=d).  

 








C.  Analysis

During the guilt/innocence phase of appellant=s trial, the State
elicited testimony from Officer Bray regarding the propensity of family
violence victims to return to the family members who abuse them.  Appellant
objected and conducted a voir dire examination of Officer Bray regarding his
qualifications.  The trial court overruled appellant=s objection and
Officer Bray gave the following testimony:

The common thing is that a lot of
the abusers or the people that are being abused gets [sic] themselves into a
position where they feel like they have no other recourse but to stay with the
person they=re with, whether it=s money matters,
whether it=s the children, or if it=s all threats. 
They will leave for a short term, then they start getting the threats to them
from the abuser saying if you don=t come back to me,
then I=m going to do such
and such.  And it usually has something to do with harm; whether it=s going to be to
them or whether it=s going to be to children or a related
threat, I=m going to get you if I see you on the street, things
like that.  So, they feel that it=s safer to go back
to the abuser and live with them and keep them happy than it is to try and live
on their own and look over their shoulder over and over and over again.








Appellant contends Officer Bray was not qualified to
testify about the behavior of victims of family violence because Bray has no
formal college education.  Contrary to appellant=s claim, the
specialized knowledge which qualifies a witness to give an expert opinion may
be derived from specialized education, practical experience, a study of
technical works, or a varying combination of these things.  Wyatt v. State,
23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  Officer Bray testified he has been a
Houston Police Officer for twenty-three years and has been an investigator
since 1989.  Bray testified he received training from the Houston Police
Department pertaining to family violence.  Bray testified that as a patrol
officer he visited scenes where family violence had occurred and worked with victims
of domestic abuse.  Bray testified he joined the HPD Family Violence Unit in
1999 and, since that time, has been involved in more than 300 cases involving
domestic violence.  Bray further testified he has observed a common trend among
victims of family violence.  Based on Officer Bray=s knowledge,
training, and experience, we conclude Bray was qualified to give expert
testimony regarding the behavior of victims of family violence.  Tex. R. Evid.
702.

The concurring opinion argues the record contains no
evidence to show Officer Bray had the qualifications to testify on the subject
matter of the behavioral propensity of victims who return to abusers
post-attack; therefore, the trial court abused its discretion.  However, we
believe the testimony by Officer Bray regarding his specific training in family
violence and extensive experience with victims of domestic abuse provides ample
evidence for the trial judge to determine Officer Bray was qualified as an
expert in this field.  Therefore, we cannot agree with the concurrence that the
trial judge abused its discretion.

In support of our position that Officer Bray was qualified
as an expert regarding the behavior of victims of family violence, we look to
several courts of appeals cases where an officer was qualified as an expert on
subjects outside general law enforcement duties.  In Perryman v. State,
the appellant was convicted of aggravated sexual assault.  Perryman v. State,
798 S.W.2d 326, 328 (Tex. App.CDallas 1990, no writ).  During trial, the
court allowed an officer to testify regarding the psychological profile of the
victim=s assailant.  Id. 
The officer testified the victim=s assailant was an
experienced offender who he categorized as a Apower reassurance
rapist.@  Id. at
329.  On appeal, appellant argued the trial court erred in allowing his
testimony.  Id. at 328.  The Dallas court concluded because of the
officer=s practical
experience in dealing with sexual assaults, specific training in psychological
profiling, and previous experience, the officer qualified as an expert.  Id.
at 329.








In Thomas v. State, the appellant was convicted of
theft and on appeal complained about the admission of an officer=s expert testimony. 
Thomas v. State, 915 S.W.2d 597, 699-600 (Tex. App.CHouston [14th
Dist.] 1996, pet. ref=d).  During trial, a police officer
testified as an expert regarding the procedures of a con game referred to as a Apigeon drop@ scheme.  Id.
at 600.  This court determined because the officer had training in the area of
financial swindles, was certified to teach other officers in this area, and had
interviewed con artists who participated in pigeon drop schemes, he was
qualified as an expert.  Id. at 600-01.

In Sabedra v. State, the appellant was convicted of
aggravated assault.  Sabedra v. State, 838 S.W.2d 761, 762 (Tex. App.CCorpus Christi
1992, pet. ref=d).  During trial, the court allowed an officer to
testify as an expert regarding his knowledge on stab wounds and his opinion on
whether the victim=s wounds were serious and permanent.  Id.
at 763.  The defendant objected at trial claiming the police officer was
testifying as a medical expert, which he was not qualified to do, but the trial
court allowed the testimony.  Id.  On appeal, the Corpus Christi court
concluded because the officer had experience in viewing and investigating slash
wounds, he possessed special knowledge and was therefore qualified as an expert
regarding the seriousness and permanence of the wounds.  Id.    

Appellant next argues that the subject matter of Officer
Bray=s testimony was
not appropriate for expert testimony.  However, Texas courts have recognized
testimony pertaining to the behavior of abuse victims as an appropriate subject
for expert testimony.  See Fielder v. State, 756 S.W.2d 309, 320 (Tex.
Crim. App. 1988) (finding expert testimony was relevant and helpful because it
assisted lay persons in understanding Athe conduct of a
woman who endures an abusive relationship@); Harris v.
State, 133 S.W.3d 760, 775 (Tex. App.CTexarkana 2004,
pet. ref=d) (holding trial
court=s noncompliance
with Rule 705(b) was harmless where expert testified regarding behavior
patterns of abuse victims).  Officer Bray=s field of
expertise is legitimate.  Bray=s testimony was within the scope of his
expertise and properly relied on observations made during his experience with
victims of family violence.








Finally, appellant contends Officer Bray=s testimony was
not helpful to the jury.  Appellant cross-examined the Complainant extensively
regarding her contact with appellant after the assault.  Appellant argued at
trial and continues to argue on appeal that the Complainant=s testimony that
she lived with appellant after February 18, 2004 undermines her testimony that
she was assaulted by appellant with a baseball bat.  Appellant=s arguments in
this case have placed the Complainant=s post-assault
behavior at issue.  Therefore, Officer Bray=s testimony
assisted the trier of fact by helping the jury to understand the evidence
regarding the Complainant=s post-assault behavior.  

We conclude the trial court did not abuse its discretion by
admitting the expert testimony of Officer Kerry Bray regarding the dynamics of
family violence.  Appellant=s second issue is overruled.

OIII.    Did
the Trial Court Improperly Admit Testimonial Hearsay During the Punishment
Phase of Appellant=s Trial?








In his first issue, appellant contends the trial court
erred in admitting the alleged testimonial hearsay statements of Carrie
Brownfield.  Brownfield did not testify at appellant=s trial.  Evidence
of statements made by Brownfield was admitted during the punishment phase of
appellant=s trial, and came from two sources: (1) an audiotape
of a 9-1-1 call made by Brownfield on September 20, 2004, and (2) the testimony
of Deputy Benwood Russell, the police officer who responded to the 9-1-1 call. 
Appellant objected to evidence of Brownfield=s statements on
the grounds that it was hearsay and violated his rights under the Confrontation
Clause.  The trial court overruled appellant=s objections.  The
9-1-1 tape, described below, was published to the jury.  Deputy Russell
testified, inter alia, that Brownfield told him she was assaulted by
appellant on September 20, 2004.  Citing Crawford v. Washington,[1]
appellant contends the admission of Brownfield=s statements
violated his right to be confronted with the witnesses against him, as
guaranteed by the Sixth Amendment to the United States Constitution.[2] 


A.  Standard of Review

The proper standard of review on the issue before us is a
hybrid one: both deferential and de novo.  AAlthough we defer
to a trial court=s determination of historical facts and
credibility, we review a constitutional legal ruling, i.e. whether a
statement is testimonial or non-testimonial, de novo.@ Wall v. State,
184 S.W.3d 730, 742 (Tex. Crim. App. 2006); see also Lilly v. Virginia,
527 U.S. 116, 136, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999) (stating courts
should independently review whether out-of-court statements violate the
Confrontation Clause).   De novo review is appropriate because the legal
ruling of whether a statement is testimonial under Crawford is
determined by the standard of an objectively reasonable declarant standing in
the shoes of the actual declarant.  Wall, 184 S.W.3d at 742B43.  AOn that question,
trial judges are no better equipped than are appellate judges, and the ruling
itself does not depend upon demeanor, credibility, or other criteria peculiar
to personal observation.@  Id. at 743.

B.  Applicable Law








The Confrontation Clause of the Sixth Amendment to the
United States Constitution provides: AIn all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him.@  U.S. Const. amend. VI.  In Crawford
v. Washington, the Supreme Court held that it was a violation of the Sixth
Amendment to admit testimonial statements of a witness who did not appear at
trial unless that witness was unavailable to testify and the defendant had a
prior opportunity for cross-examination.  Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. Generally
speaking, a statement is Atestimonial@ if it is a solemn
declaration made for the purpose of establishing some fact.  Id., 541
U.S. at 51, 124 S.Ct. at 1364.  The Crawford Court chose to Aleave for another
day any effort to spell out a comprehensive definition of >testimonial.=@ Id.   However,
the Court identified certain classes of Acore@ statements which
could be regarded as testimonial, including: (1) Astatements that
were made under circumstances which would lead an objective witness reasonably
to believe that the statement would be available for use at a later trial,@ and (2)
statements taken by police officers Ain the course of
interrogations.@ Id., 541 U.S. at 51B52, 124 S.Ct. at
1364.  The Court noted that its use of the term Ainterrogation@ in this context
was Ain its colloquial,
rather than any technical legal sense.@ Id., 541
U.S. at 53, 124 S.Ct. at 1365 n.4.  

We have identified the following principles as guidance in
determining whether statements are testimonial in nature: (1) testimonial
statements are official and formal in nature, (2) interaction with the police initiated
by a witness or the victim is less likely to result in testimonial statements
than if initiated by the police, (3) spontaneous statements to the police are
not testimonial, and (4) responses to preliminary questions by police at the
scene of the crime while police are assessing and securing the scene are not
testimonial.  Ruth v. State, 167 S.W.3d 560, 568B69 (Tex. App.CHouston [14th
Dist.] 2005 pet. ref=d). 

The Supreme Court recently provided additional guidance for
determining whether an out of court statement contains testimonial hearsay.  See
Davis v. Washington, --- U.S. ---, ---, 126 S.Ct. 2266, 2273B78, 165 L.Ed.2d
224 (2006).   The Court explained:

Statements are non-testimonial when
made in the course of police interrogation under circumstances objectively
indicating that the primary purpose of the interrogation is to enable police
assistance to meet an ongoing emergency.  They are testimonial when the
circumstances objectively indicate that there is no such ongoing emergency, and
that the primary purpose of the interrogation is to establish or prove past
events potentially relevant to later criminal prosecution.








Id. at 2273B74.  In Davis,
the Court held that statements made by a victim of domestic violence during a
9-1-1 call were not testimonial.  Id. at 2277.  In its analysis, the
Court considered the following characteristics of the exchange: (1) the caller
was describing events as they were actually happening, rather then past events,
(2) any reasonable listener would recognize that the caller was facing an
ongoing emergency, (3) the nature of the questions and answers, viewed
objectively, was such that the elicited statements were necessary to be able to
resolve the present emergency, rather than simply to learn what had happened in
the past, and (4) the caller was frantically answering the 9-1-1 operator=s questions over
the telephone, in an environment that was not tranquil or safe.  Id. at
2276B77.  The Court
noted that the initial interrogation conducted during a 9-1-1 call is
ordinarily not designed primarily to establish or prove some past fact, but to
describe current circumstances requiring police assistance. Id. at
2276.                                                                               

C.  Analysis

1.  Confrontation Rights During the Punishment Phase

Initially, the State argues that the Confrontation Clause
does not apply during the punishment phase of a criminal trial in a Texas
court.  However, the Court of Criminal Appeals and this court have found
Confrontation Clause violations during the punishment phase of criminal trials,
thereby implicitly finding that the Confrontation Clause does apply during the
punishment phase.  See Russeau v. State, 171 S.W.3d 871, 880B81 (Tex. Crim.
App. 2005) (holding trial court erroneously admitted testimonial hearsay during
punishment phase in violation of Confrontation Clause); Grant v. State,
218 S.W.3d 225, 232 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d) (finding trial
court erred in admitting testimonial statements in violation of Crawford
during punishment phase).  We reject the State=s argument that
the Confrontation Clause does not apply during the punishment phase of a
criminal trial. 








2.  The 9-1-1 AudiotapeCA Cry For Help

State=s Exhibit 36, an audiotape of a 9-1-1 call
initiated by Brownfield, was admitted into evidence and published to the jury
during the punishment phase of appellant=s trial. Following
is a transcript of the 9-1-1 call made by Brownfield.  We preface this transcript
by noting that Brownfield was highly distraught and cried continuously
throughout the 9-1-1 call, at times becoming hysterical.

[Operator #1]:        Harris County
Sheriffs= Department.  Do you need police,
fire, or ambulance?

[Brownfield]: I need a police
officer please.

[Operator #1]:        Okay.  Are
you hurt in any way, ma=am?

[Brownfield]: I don=t need an ambulance or anything.

[Operator #1]:        Okay.  Calm
down and let me transfer you to the Sheriffs= Department.

[Brownfield]: Thank you.   

[Operator #1]:        Try and calm
down please.

[Brownfield]: I=m trying.

[Operator #2]:        Harris County
911 do you need police?

[Brownfield]: I need a police
officer to my residence please.

[Operator #2]:        Okay.  What=s going on, ma=am?

[Brownfield]: My boyfriend just
beat me up.

[Operator #2]:        Do you need
an ambulance?

[Brownfield]: No, I=m okay.

[Operator #2]:        Okay.  Thank
you.

[Brownfield]: I mean, I don=t know if I need a cop to come out
here.  I don=t know what to do.  I=ve never had this happen before.  I
want to file charges.

[Operator #2]:        Is he still
on the premises?

[Brownfield]: No.  We were in my
car.

[Operator #2]:        Are you at
home now?








[Carrie]:                 I came
home.

[Operator #2]:        What=s the apartment number?

[Brownfield]: It=s Unit D, it=s the third trailer on the left.

[Operator #2]:        What=s your name?

[Brownfield]: Carrie.

[Operator #2]:        Carrie, what
- 

[Brownfield]: I don=t know if a police officer has to
come out here.  I mean, I don=t need an ambulance or anything, and he is gone.  But I want to file
charges, so I don=t know if I should just go down to
the station tomorrow -   

[Operator #2]:        No, no, no,
no.  We=ll send you an officer.

[Brownfield]: Okay.  

[Operator #2]:        Okay.  He=s never done this before?

[Brownfield]: Yeah.

[Operator #2]:        Okay, and he=s not there?

[Brownfield]: No.  He=s not here, but my door doesn=t lock very good.  I don=t think he=ll come over here.  I=m sorry.

[Operator #2]:        It=s okay.  I can understand.

[Brownfield]: I didn=t want to call the police on him.

[Operator #2]:        You don=t?

[Brownfield]: I mean, I do, but I
feel bad.

[Operator #2]:        Why?  You
didn=t do anything.

[Brownfield]: He said he=s going to kill me if I call the
police.  He told me he=d kill my whole family. 

[Operator #2]:        It=s okay Carrie.  Calm down.  Carrie,
calm down.

[Brownfield]: Okay. Yes ma=am.

[Operator #2]:        Do you think
he=s going to come back?

[Brownfield]: No.  I don=t think he=ll come back tonight.  The police
are already looking for him.

[Operator #2]:        They are? 
For what, ma=am?

[Brownfield]: Aggravated assault.








[Operator #2]:        Okay.

[Brownfield]: I think I broke my
finger.

[Operator #2]:        Do you want
to see an ambulance?

[Brownfield]: No.

[Operator #2]:        Okay,
Carrie.  What=s the name of your trailer park?

[Brownfield]: It=s not a name.

[Operator #2]:        There=s no name?

[Brownfield]: No, ma=am.

[Operator #2]:        Is there a
gate?

[Brownfield]: No ma=am.

[Operator #2]:        What I=m going to do is I=m going to go ahead and enter this
call for you.  But I need - If he comes back I need you to call back through
9-1-1.  Okay?

[Brownfield]: He won=t.  We weren=t even here.  We were in my car.

[Operator #2]:        Okay.  But if
he comes to your house, go ahead and call us back.  Okay?

[Brownfield]: Yes, ma=am.  How long do you think it will
be?

[Operator #2]:        I=m not sure, but I=m putting the call in now.  Okay?

[Brownfield]: Yes, ma=am.

[Operator #2]:        Take a deep
breath.  Okay?

[Brownfield]: Yes ma=am.

[Operator #2]:        It=s okay.  We=ll get you some help, okay?

[Brownfield]: I don=t like calling the police on people
but -

[Operator #2]:        Yeah, but he
doesn=t have the right to do this to
you.  Take a deep breath okay?  You=re gathering yourself okay now?

[Brownfield]: Yeah, I=m okay.      

[Operator #2]:        I=ve got the call in for you, okay. 
I just need you to stay there and make sure you don=t open the door.  Make sure that
when we really knock on the door, they=ll let you know who it is.

[Brownfield]: Okay.

[Operator #2]:        Okay.  Now if
he comes back, you call us through 9-1-1.  Okay?








[Brownfield]: Okay. Thank you.

[Operator #2]:        All right,
Carrie. 

[Brownfield]: Bye.

[Operator #2]:        Bye-bye.

Citing Davis, appellant argues that Brownfield=s statements to
the 9-1-1 operator were testimonial because Brownfield was not presently being
assaulted, was reporting a crime that occurred at a different location, and was
willing to wait until the next day to file a police report.  However, we find
the following facts compelling: Brownfield was highly distressed and stated
that her Aboyfriend just beat [her] up.@  See Davis,
126 S.Ct. at 227 (finding 9-1-1 caller=s Afrantic answers@ indicative of
non-testimonial statements). Brownfield told the 9-1-1 operator that the
assault occurred in her car, and she did not know what to do.  Brownfield
stated she did not think the assailant would come to her home;
however, the assailant was currently wanted by the police for aggravated
assault, the assailant threatened to kill Brownfield and her entire family; and
the door to her trailer Adoesn=t lock very good.@  Although
Brownfield stated she did not need an ambulance, Brownfield told the 9-1-1
operator that she believed her finger was broken, and inquired about how long
it would take the police to arrive.  Brownfield=s statements were
made in the course of a conversation initiated by the victim of a crime, and
were neither Aofficial and formal in nature@ nor Asolemn
declaration[s] made for the purpose of establishing some fact.@  Crawford,
541 U.S. at 51, 124 S.Ct. at 1364; Ruth 167 S.W.3d at 569.  Viewed
objectively, the primary purpose of Brownfield=s 9-1-1 call and
her statements to the operator was to Acry for help.@  Davis,
126 S.Ct. at 2279.








Similarly, the primary purpose of the 9-1-1 operator=s questions and
Brownfield=s responses to those questions was to determine if
Brownfield was physically injured and in need of medical assistance, and to
assess the potential for a continuing threat to Brownfield=s safety or the
safety of the responding officer.  See id. at 2273B74 (noting that
officers called to investigate need to assess the situation to determine
potential threats to their own safety and the safety of the victim).  The
operator asked Brownfield if she was injured and inquired about whether the
assailant was present, and whether Brownfield thought the assailant would
return.  The operator instructed Brownfield to stay inside of her home and Amake sure you don=t open the door.@  Importantly, the
operator did not inquire about the assailant=s name and
address, or other information which could potentially be relevant to a later
criminal prosecution.  See id.  Accordingly, we conclude the statements
in the 9-1-1 call initiated by Brownfield, when viewed objectively, were made
under circumstances indicating that the primary purpose of the interrogation
was to enable the police to meet an ongoing emergency, rather than simply to
learn what had happened in the past.  See id.  Therefore, Brownfield=s statements on
the 9-1-1 audiotape are not testimonial.








Appellant next argues the trial court erred in admitting
the 9-1-1 tape because Brownfield=s statements do
not fall within the excited utterance exception to the hearsay rule.[3] 
Appellant objected to State=s Exhibit 36 as hearsay, and the trial
court overruled appellant=s objection.  We review the trial court=s evidentiary
ruling on this sub-issue for an abuse of discretion. See Zulianv. State,
97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (AThe admissibility
of an out-of-court statement under the exceptions to the general hearsay rule
is within the trial court=s discretion.@)  An excited
utterance is a Astatement relating to startling event or
condition made while the declarant was under the stress of excitement caused by
the event or condition.@ Tex. R. Evid. 803(2).  The basis for the
excited utterance exception is a psychological one, namely, the fact that when
an individual is in the grip of a violent emotion, excitement, or pain, he
ordinarily loses the capacity for reflection necessary to the fabrication of
falsehood, and the Atruth will come out.@ Id.  In
determining whether a hearsay statement is admissible as an excited utterance,
the critical determination is whether the declarant was still dominated by the
emotions, excitement, fear, or pain of the event or condition at the time of
the statement. Id. at 595B96.  Based on our
review of Exhibit 36, we conclude the statements made by Brownfield were
related to a startling event, i.e. her assault, and were made at a point
in time when Brownfield was in an extremely excited emotional state as a direct
result of the event.  The trial court did not abuse its discretion in
overruling appellant=s hearsay objection to State=s Exhibit 36.

Because we conclude the statements of Brownfield recorded
on the 9-1-1 tape fall within the excited utterance exception to the hearsay
rule and are not testimonial, we hold that the trial court did not err by
admitting State=s Exhibit 36 into evidence during the
punishment phase of appellant=s trial.

4.  Brownfield=s Statements to
Deputy Russell

During the punishment phase of appellant=s trial, Deputy
Russell testified he was dispatched to Brownfield=s residence on the
night of September 20, 2004 in response to a 9-1-1 call reporting an assault. 
The record does not indicate the amount of time that passed between Brownfield=s 9-1-1 call and
Russell=s arrival at her
residence.  Russell testified Brownfield was Avery upset and
scared,@ and had a Abaseball-sized
knot underneath her right eye.@  Russell further testified Brownfield was
Aworried about her
front door not being able to be locked and the suspect coming back to her and
bothering her.@  Based on this testimony, the State argues that
Brownfield=s statements to Russell were not testimonial.  Rather,
the State contends, Russell=s questions and Brownfield=s responses
allowed Russell to evaluate the risk of harm and Aresolve the
situation.@








While Russell=s conversation
with Brownfield may have begun as an interrogation to determine the need for
emergency assistance, it quickly evolved into a police investigation conducted
for the primary purpose of collecting information for a future prosecution.  See
Davis, 126 S.Ct. at 2277, 2279 (stating Ainitial inquiries@ made by officers
at the scene may produce non-testimonial statements; however, a conversation
which begins as an interrogation to determine the need for emergency assistance
may Aevolve into
testimonial statements@).     Russell testified the assailant
was not present at Brownfield=s residence when he arrived, and
Brownfield stated she had been assaulted Asomewhere on I-45.@  Russell
testified that Brownfield stated she had been assaulted by her boyfriend,
Gerald Jackson,[4]
and provided a physical description of the assailant.  Russell further
testified that Brownfield stated the assailant struck her face several times
with his closed fist and with a cellular telephone.  Russell testified he
collected information from Brownfield to provide to the district attorney, and
filled out paperwork for an emergency protective order while still at
Brownfield=s residence. The fact that Russell was filling out
paperwork and gathering detailed information for the district attorney
indicates he was neither Aassessing and securing the scene@ nor primarily
concerned with the immediate safety of himself or Brownfield.  Ruth, 167
S.W.3d at 569; see also Wall, 184 S.W.3d at 742 n.42.  Russell further
testified that based on information he provided to the district attorney,
assault charges were filed against the assailant that night.  








Under the facts of this case, we find the circumstances
surrounding Deputy Russell=s interrogation of Brownfield at her
residence objectively indicate that there was no ongoing emergency, and the
primary purpose of the interrogation was to gather information about past
events potentially relevant to a later criminal prosecution.  See Davis,
126 S.Ct. at 2273B74.  We further find that an objectively
reasonable declarant in Brownfield=s shoes would have
appreciated the fact that Russell was conducting a criminal investigation and
collecting evidence for a prospective prosecution.  See id. at 2272,
2278; Wall, 184 S.W.3d at 744B45.  Accordingly,
Brownfield=s statements to deputy Russell were testimonial.  See
Davis, 126 S.Ct. at 2278.  Because appellant did not have a prior
opportunity to cross-examine Brownfield, we hold that the trial court erred in
admitting Deputy Russell=s testimony regarding statements made to
him by Brownfield on September 20, 2004, and the trial court=s error was a
violation of appellant=s right to confrontation under the Sixth
Amendment to the United States Constitution.  See Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.  

Although the trial court erred in admitting this evidence,
we nevertheless will affirm if we determine beyond a reasonable doubt that the
harm from the error did not contribute to appellant=s punishment.  Tex. R. App. P. 44.2(a); Grant, 218 S.W.3d at 233.  In determining
whether error in admitting testimonial statements in violation of Crawford
is harmless beyond a reasonable doubt, we consider: (1) the importance of the
testimonial statements to the State=s case; (2)
whether the statements were cumulative of other evidence; (3) the presence or
absence of evidence corroborating or contradicting the statements on material
points; and (4) the overall strength of the State=s case.  Id. 
The error does not require reversal unless there is a reasonable probability
that the Crawford error, within the context of the entire trial, moved
the jury from a state of non-persuasion to one of persuasion on a particular
issue.  Id.

Utilizing this test, we hold that the error was harmless
beyond a reasonable doubt.  First, Deputy Russell=s testimony was
not important to the State=s case.  The vast majority of the State=s evidence during
the punishment phase of appellant=s trial focused on
appellant=s numerous prior criminal convictions and the
testimony of the Complainant, Priscilla Smith.  Further, the majority of
Russell=s testimony was
cumulative of, and corroborated by, the properly admitted evidence of
Brownfield=s statements during the 9-1-1 call, which were
recorded on State=s Exhibit 36. 








The State presented compelling evidence during the
punishment phase of appellant=s trial.  The State=s fingerprint
expert identified appellant as the individual convicted and sentenced in five
prior criminal judgments, certified copies of which were admitted into
evidence.  The judgments show appellant was previously convicted of four
felonies and one misdemeanor, including aggravated assault with a deadly
weapon, aggravated assault, assault of a family member, and two convictions for
possession of cocaine.  This evidence was uncontroverted, and the jury found
both of the State=s enhancement allegations to be true.

The Complainant testified during the punishment phase and
described in detail how she suffered at the hands of appellant.  The
Complainant testified appellant was extremely jealous and controlling, and he hit
her and slapped her on several occasions.  The Complainant testified appellant
assaulted her in a variety of ways, including hitting her with a belt, pushing
her against a door, and repeatedly hitting her head against a table.  The
improperly admitted testimonial statements of Brownfield are, by comparison
with the strength and volume of the properly admitted evidence,
inconsequential.  In light of the evidence properly before the jury, there is
no reasonable probability that the testimonial statements moved the jury from a
state of non-persuasion to one of persuasion with regard to appellant=s punishment.

Appellant=s first issue is overruled.

Conclusion

Having considered and overruled each of appellant=s issues on
appeal, we affirm  the judgment of the trial court.

 

 

/s/      John S. Anderson

Justice

 

 

Judgment rendered
and Majority and Concurring Opinions filed November 29, 2007.

Panel consists of
Justices Anderson, Fowler, and Frost. (Frost, J., Concurring.)

Publish C Tex. R. App. P. 47.2(b).









[1]  Crawford v. Washington, 541 U.S. 36, 124
S.Ct. 1354, 158 L.Ed.2d 177 (2004).





[2]  Appellant does not argue on appeal that the
admission of Brownfield=s statements violated his confrontation rights under
the Texas Constitution.





[3]  The State=s
appellate brief provides no response to appellant=s argument regarding this sub-issue.





[4]  The jury heard evidence that appellant used the name
Gerald Jackson as an alias.